**BOARD OF DIRECTORS OF the CHEST- NUT GROVE CONDOMINIUM UNIT OWNERS' ASSOCIATION, Plaintiff,**

v.

**RESOLUTION TRUST CORPORATION, Receiver for Trustbank Savings, F.S.B. and Receiver for Trustbank Federal Savings Bank, Defendant.**

Civ. A. No. 92–2589.

United States District Court, District of Columbia.

Nov. 18, 1993.

Amended Order Dec. 3, 1993.

William O.P. Snead, III, Fairfax, VA, for plaintiff.

Kurt C. Rommel, Stauffer & Abraham, Vienna, VA, for defendant.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

Before the Court is defendant's motion to dismiss under Federal Rule of Civil Procedure (Fed.R.Civ.P.) 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons stated herein, we grant defendant's motion and dismiss the case.

### I. Background

Plaintiff is the board of directors of the Chestnut Grove Condominium Unit Owners' Association ("the Association"), an organization representing the individual unit owners of the Chestnut Grove Condominium ("Chestnut Grove"), located in Reston, Virginia.[1] Plaintiff asserts that the developer of Chestnut Grove, Chestnut Grove Associates ("CGA"), breached certain express and implied warranties by ignoring and refusing to

---

1. The Association is unincorporated and organized pursuant to the Virginia Condominium Act, §§ 55–79.39 *et seq.* of the Code of Virginia (1950).

repair certain serious structural defects in the buildings. Plaintiff now seeks to collect for the cost of repairs.

A somewhat complex organizational structure confronts plaintiff in its attempt to recover damages. The developer, CGA, is a Virginia limited partnership lacking the capital to pay for repairs. CGA's general partner, TB Capital, filed for voluntary bankruptcy protection in the Eastern District of Virginia.[2] TB Capital, in turn, is a wholly owned subsidiary of Trustbank Savings, F.S.B., now in receivership and operating under the name Trustbank Federal Savings Bank ("Trustbank"). The Resolution Trust Corporation ("RTC") has acted as receiver of Trustbank Savings and Trustbank Federal since January 1991.

In April 1987, while both Trustbank and TB Capital were solvent, plaintiff brought suit in Virginia state court ("state trial") against CGA for the alleged damage.[3] By the time of trial in October 1991, Trustbank had been declared insolvent and TB Capital had filed for bankruptcy protection. Pursuant to the Bankruptcy Act, an automatic stay halted all actions related to TB Capital. *See* 11 U.S.C. § 362(a)(3). During the state trial, defendant CGA argued that the automatic bankruptcy stay applied to the action against it because TB Capital was the general partner of CGA. The Virginia court disagreed, and entered a judgment ("state judgment")

against CGA in the amount of $3,914,979. CGA lacks the assets to satisfy the judgment.

Plaintiff now seeks to enforce its judgment against the RTC as receiver for TB Capital's parent company, Trustbank. To make this leap, plaintiff alleges that Trustbank is the alter ego of TB Capital, the general partner of CGA, and petitions the Court to pierce the corporate veil.[4] Although TB Capital, as general partner of CGA, is theoretically liable for the judgment against CGA, the automatic stay prevents pursuit of TB Capital's assets outside of bankruptcy court.[5] Plaintiff argues that its claim before this Court has life independent of the state judgment because the current claim is directly against the RTC[6] for wrongful manipulation of the TB Capital corporate entity.[7]

The RTC seeks dismissal on the following two grounds: that the bankruptcy stay freezes any claim affecting the status of TB Capital[8]; and that plaintiff's allegations as to alter ego do not meet the Virginia standard in order to pierce the corporate veil.[9]

## II. *Analysis*

◼ Pursuant to Fed.R.Civ.P. 12(b), the RTC has moved to dismiss the action on the theory that this Court lacks jurisdiction because of the bankruptcy stay. In viewing a motion to dismiss, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v.*

---

2. TB Capital filed for bankruptcy in October 1991.

3. This suit named only CGA as defendant.

4. Plaintiff alleges that "[a]t all times relevant, the officers and directors of TB Capital were officers, directors and/or employees of Trustbank Savings," Complaint, p. 14, and that "wrongful manipulation by Trustbank of TB Capital has rendered TB Capital's bankruptcy estate woefully inadequate to satisfy the judgment." Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss, p. 3.

5. It is doubtful that TB Capital has the funds to satisfy the judgment against CGA.

6. Claims against the RTC may be brought in the district court where the depository institution is located or in U.S. District Court for the District of Columbia. *See* 12 U.S.C. § 1821(d)(6)(A).

7. Therefore, plaintiff contends that even if we determine that the state judgment violated the automatic stay, the claim against the RTC would remain valid and plaintiff would simply have to once again prove damages.

8. Under bankruptcy law, a "claim" includes any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5)(A).

9. The parties do not dispute that Virginia substantive law applies as the state with the most significant relationship to the issue. *See Resolution Trust Corp. v. Northpark Joint Venture*, 958 F.2d 1313, 1318 (5th Cir.1992) *cert. denied* — U.S. ——, 113 S.Ct. 963, 122 L.Ed.2d 120 (1993).

*Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The factual allegations of the complaint must be presumed true and liberally construed in favor of the plaintiff. *Shear v. National Rifle Ass'n.,* 606 F.2d 1251, 1253 (D.C.Cir.1979). The plaintiff is entitled to all favorable inferences which may be drawn from those allegations. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

The Court's initial inquiry must be as to whether it has jurisdiction over this action.[10] *See American Motorists Ins. Co. v. United Furnace Co.,* 876 F.2d 293, 298 (2nd Cir. 1989). As stated in *N.L.R.B. v. Edward Printing, Inc.,* 804 F.2d 934, 939 (6th Cir. 1986),

> the court in which the litigation claimed to be stayed is pending has jurisdiction to determine not only its own jurisdiction but also the more precise question whether the proceeding pending before it is subject to the automatic stay.

(*citing In re Baldwin–United Corp. Litigation,* 765 F.2d 343, 347 (2d Cir.1985)).

■ To determine whether jurisdiction exists, the Court must define the scope of the bankruptcy stay and decide whether the stay denies plaintiff standing to pursue TB Capital's parent company outside of bankruptcy court. Standing is an Article III requirement for jurisdiction which cannot be waived or ignored by the parties. *Barhold v. Rodriguez,* 863 F.2d 233, 234 (2nd Cir.1988). Therefore, the Court addresses the issue without prompting from the parties.[11]

■ The issue of standing is particularly important because of the danger of conflicting verdicts. The decision of this Court is not appealable to the same circuit court as is

a decision of the Bankruptcy Court for the Eastern District of Virginia. If the trustee exercised an alter ego claim in bankruptcy court while plaintiff separately pursued this action, there exists the possibility that the two verdicts would be inconsistent. *See St. Paul Fire and Marine Ins. Co. v. Pepsico, Inc.,* 884 F.2d 688, 696 (2nd Cir.1989).

We assume for purposes of determining jurisdiction that the state judgment is valid and that plaintiff has alleged facts sufficient to meet the Virginia standard for piercing the corporate veil. The question before the Court becomes whether the automatic stay prohibits this Court from entering judgment against Trustbank, now controlled by the RTC, to satisfy a creditor[12] of its bankrupt subsidiary. We hold that the stay does prohibit this. Under bankruptcy law, one of the duties of the bankruptcy trustee is to prosecute all causes of actions accruing to the bankrupt estate that may result in additional income for the satisfaction of the bankrupt's debts. *Pepsico,* 884 F.2d at 695.

■ If Virginia law provides that during solvency the alter ego cause of action accrues to the corporation, then after bankruptcy the cause of action accrues to the estate.[13] We find the Fourth Circuit's interpretation of Virginia law dispositive on this issue. In *Steyr–Daimler–Puch of America Corp. v. Pappas,* 852 F.2d 132, 135–36 (4th Cir.1988), the Fourth Circuit determined that under Virginia law a corporation has an equitable interest in the assets of an alter ego. *Id., citing Pepper v. Dixie Splint Coal Co.,* 165 Va. 179, 181, 181 S.E. 406 (1935).

■ Under *Steyr–Daimler–Puch,* a creditor cannot assert a claim against a third-party for its own benefit that the debtor can assert for the benefit of all of its creditors.

---

10. Only if the Court has jurisdiction can it consider the other arguments raised by the parties.

11. Because neither party considered standing as applied to alter ego claims by the Fourth Circuit, the Court granted both sides an additional opportunity to address the issue.

12. It is clear to the Court that plaintiff is a judgment creditor of TB Capital. *See St. Paul Fire and Marine,* 884 F.2d at 701. Plaintiff states that its claim against Trustbank is for "wrongful conduct involving the manipulation of the TB

Capital corporate entity." Plaintiff's Opposition, p. 8. Such a claim is identical to that which could be made by another creditor of TB Capital. Plaintiff has not alleged any cause of action against Trustbank independent of its dealings with TB Capital.

13. Federal bankruptcy law looks to state law for definition of what interests are the respective rights of the debtor or creditors of the debtor. *See Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

*See In re Litchfield Co. of South Carolina Limited Partnership,* 135 B.R. 797, 801 (W.D.N.C.1992). In order for plaintiff to maintain this action, there must be a judicial determination that the trustee has abandoned the alter ego claim. *Steyr–Daimler–Puch,* 852 F.2d at 136. No such determination has been made in this case. The third party creditor does not acquire the cause of action by default merely because the trustee has not exercised the right of action.[14] Therefore, the alter ego claim is to be asserted by the bankruptcy trustee and the automatic stay applies. *Wharton v. Commonwealth of Virginia,* 1992 WL 88181, *2 (W.D.Va.1992).

The logic behind the *Steyr–Daimler–Puch* holding is obvious. Were this Court to pierce the corporate veil, the assets of Trustbank would be available to satisfy only plaintiff's claim. If, however, the alter ego claim is an asset of the bankrupt estate, any assets attached could be used to maximize the value of the estate. *St. Paul Fire and Marine,* 884 F.2d at 695. A district court should not use its equitable powers so as to threaten the ability of the bankruptcy court to insure uniformity of decision. *In re Baldwin–United Corp. Litigation,* 765 F.2d at 349.

Our reasoning applies whether or not plaintiff remains the only scheduled creditor of TB Capital.[15] The purpose of the automatic stay is to allow a swift and equitable settlement of outstanding debts. The record indicates that the action before this Court is already negatively affecting the bankruptcy proceedings in Virginia. *See* Plaintiff's Suppl. Brief, Ex. A. Plaintiff has refused to file a proof-of-claim against the assets of TB Capital, as required under the Bankruptcy Rules,[16] on the theory that

> acceptance of the funds from this estate could prove detrimental in its litigation against Resolution Trust Corporation ...

pending in the United States District Court for the District of Columbia.

Motion for Order Authorizing and Directing Distribution of Estate, p. 1. It is improper for this Court to interfere in the vital authority of the bankruptcy court to carry out the provisions of the Bankruptcy Code. *In re Baldwin–United Corp. Litigation,* 765 F.2d at 348.

### III. *Conclusion*

Plaintiff lacks standing to pursue this action, even assuming *arguendo* the validity of the Virginia state court judgment against CGA and the ability of plaintiff to prove an alter ego cause of action. We must decline both defendant's invitation to determine the validity of the state judgment and plaintiff's invitation to consider the merits of the alter ego claim. This action is dismissed accordingly.

---

**14.** *Stanley v. Sherwin–Williams Co.,* 156 B.R. 25, 26 (W.D.Va.1993) (Under 11 U.S.C. § 554(c) if there has been no hearing, the property of the estate can only be abandoned if it has been scheduled and "not 'otherwise administered' at the time the case is closed"). According to the record in this case, no alter ego claim has been scheduled. *See* Plaintiff's Second Suppl. Brief in Opposition to Defendant's Motion to Dismiss ("Plaintiff's Suppl. Brief"), Ex. A.

**15.** The record indicates that plaintiff was the only scheduled creditor as of April 1993. Plaintiff's Suppl. Brief, Ex. A.

**16.** Bankruptcy Rule 3002(a) requires an unsecured creditor to file proof of claim. *See In re T.B. Capital, Inc.,* Case No. 91–14255–T, 1993 WL 561781 (Bankr.E.D.Va.1993).