GMAC Mortgage Corporation of Pennsylvania, f/k/a GMAC Mortgage Corporation of Iowa, Plaintiff,

Randall Cudd and Jim Claycomb, Intervenors-Respondents-Petitioners,

v.

Michael Gisvold and Drue Gisvold, Defendants-Appellants,†

United States of America, U.S. Attorney General, Chicago Title Insurance Company, a/k/a Old Republic National Insurance Company, Title Insurance Company of Minnesota, Defendants.

Supreme Court

*No. 96–1663. Oral argument October 7, 1997.—Decided January 28, 1998.*

(Also reported in 572 N.W.2d 466.)

†Motion for reconsideration denied February 24, 1998.

459

For the intervenors-respondents-petitioners there were briefs by *Catherine R. Quiggle* and *Rodli, Beskar, Boles & Krueger, S.C.*, River Falls and oral argument by *Catherine R. Quiggle*.

For the defendants-appellants there was a brief by *R. Michael Waterman* and *Mudge, Porter, Lundeen & Seguin, S.C.*, Hudson and oral argument by *R. Michael Waterman*.

¶ 1.   N. PATRICK CROOKS, J.   Petitioners seek review of a published decision of the court of appeals,[1] reversing an order of the circuit court for St. Croix County, the Honorable Eric. J. Lundell presiding. The circuit court excused the petitioners' non-compliance

---

[1] *GMAC v. Gisvold*, 206 Wis. 2d 396, 557 N.W.2d 826 (Ct. App. 1996).

with Wis. Stat. § 846.17 (1993–94),[2] which requires the purchaser at a foreclosure sale to submit the balance of the purchase price within ten days of confirmation of the sale, and afforded the petitioners an opportunity to complete the purchase in accordance with § 846.17. The circuit court further determined that the redemption period allowed for the respondents had expired and, consequently, their attempt to redeem the property was not valid.

¶ 2. The court of appeals reversed, concluding the circuit court had no equitable authority to waive the petitioners' statutorily imposed payment requirements. The court of appeals reasoned the language in Wis. Stat. § 846.17, commanding forfeiture of the purchasers' deposit and resale of the property if the ten-day time period is not complied with, is mandatory. As such, the petitioners had forfeited their ten percent deposit. The court of appeals further determined that the respondents had properly redeemed the property.

¶ 3. Upon review, we conclude that the respondents did not successfully redeem the property when they paid the balance of their mortgage on March 19, 1996. We further conclude that the language of Wis. Stat. § 846.17 is mandatory insofar as it requires forfeiture of a purchaser's deposit and resale of the property in the event the purchaser does not comply with the ten-day time limitation. Therefore, when a purchaser fails to submit the balance of the purchase price within ten days of confirmation of the sale, a circuit court has no equitable authority to excuse non-compliance and must adhere to the statute by ordering forfeiture of the purchaser's deposit and resale of the

_____

[2] All future references to the Wisconsin Statutes will be to the 1993–94 version of the statutes.

property. We also conclude that Wis. Stat. § 846.165 contemplates notice to the purchaser at a foreclosure sale of when the sale is confirmed, when the mortgagor's redemption period ends, and when the purchaser's ten-day period for payment of the purchase price balance expires. Finally, we conclude that the petitioners complied with the statutory mandate of Wis. Stat. § 846.17 because they submitted the balance of the purchase price within ten days of the effective date of the confirmation of the sale which was June 5, 1996. Accordingly, we reverse the decision of the court of appeals.

## I.

¶ 4. The relevant facts, though lengthy and somewhat confusing, are not in dispute. In 1992, respondents Michael and Drue Gisvold defaulted on their home mortgage held by GMAC Mortgage Corporation (GMAC). GMAC initiated foreclosure proceedings, and a foreclosure judgment was entered on April 27, 1993, in favor of GMAC. A sale of the home was subsequently scheduled for the following November. The sale did not transpire because Drue Gisvold filed a Chapter 13 bankruptcy petition shortly before the scheduled sale. That bankruptcy petition was voluntarily dismissed on January 5, 1994.

¶ 5. A foreclosure sale was thereafter scheduled and was conducted on March 15, 1994. Petitioners Randall Cudd and Jim Claycomb were the successful bidders at the sale. They deposited ten percent of the purchase price, and the sale was subsequently confirmed on March 30, 1994. Cudd and Claycomb submitted the remaining balance of the purchase price to the clerk of courts within ten days of the

confirmation of the sale pursuant to Wis. Stat. § 846.17.

¶ 6. On April 6, 1994, the Gisvolds filed a motion to vacate the circuit court's order confirming sale, arguing they did not receive sufficient notice of the confirmation hearing. Receiving no objection to the motion, the circuit court vacated the order confirming sale on June 3, 1994.

¶ 7. The confirmation hearing was rescheduled for July 8, 1994. Michael Gisvold filed a Chapter 11 bankruptcy petition prior to the scheduled hearing date, and the confirmation hearing was canceled. GMAC brought a motion before the bankruptcy court for relief from the automatic stay of the foreclosure proceeding initiated by the filing of the bankruptcy petition. On February 13, 1995, the bankruptcy court granted GMAC's motion for relief.

¶ 8. The confirmation hearing was again rescheduled and set for April 6, 1995. The circuit court denied GMAC's motion to confirm the foreclosure sale in an order dated April 17, 1995. However, the circuit court's order provided that GMAC could schedule another foreclosure sale and commence posting and publishing notice of such sale.

¶ 9. A second foreclosure sale was conducted on June 13, 1995, and it is the events surrounding the confirmation of this sale which provide the basis for the dispute before us now. At the sale, Cudd and Claycomb were once again the successful bidders. They deposited ten percent of the purchase price, and a confirmation hearing was scheduled for June 27, 1995. Prior to the scheduled hearing, the foreclosure proceeding was stayed due to Drue Gisvold filing another bankruptcy petition seeking relief under Chapter 13 of the Bankruptcy Code. The bankruptcy petition was

dismissed voluntarily on July 25, 1995, and the confirmation hearing was rescheduled for October 3, 1995. Again, the hearing did not take place because Michael Gisvold filed a bankruptcy petition. That bankruptcy petition was voluntarily dismissed on October 19, 1995.

¶ 10. The confirmation hearing was rescheduled for a third time and set for December 27, 1995. This hearing did take place. As a purchaser of the foreclosed property, Cudd was present at the hearing.[3] The circuit court granted GMAC's application for confirmation of the sale. However, in accord with an in-court stipulation between GMAC and the Gisvolds, the circuit court stayed entry of the confirmation order until January 15, 1996, to allow the Gisvolds additional time to redeem the property.[4] The order indicated that if the Gisvolds did not redeem the property by January 15, 1996, at 4:00 p.m., the sale would be approved and confirmed effective January 16, 1996, and Cudd and Claycomb would have ten days

---

[3] We find no specific evidence in the record indicating that Cudd and Claycomb received notice of the confirmation hearing. Because purchasers are "quasi-parties" appearing in an action to confirm a foreclosure sale and may appeal orders affecting their right to confirmation of the sale, *Gumz v. Chickering*, 19 Wis. 2d 625, 121 N.W.2d 279 (1963), they should receive notice of the confirmation hearing. *See* John S. Goodland, *Mortgage and Land Contract Foreclosures in Wisconsin* § 9.02 (1989). We assume such notice was given in this case since Cudd was present at the hearing.

[4] The record does not include a transcript of the December 27, 1995, hearing setting forth the oral stipulation between GMAC and the Gisvolds. However, the parties do not dispute that the stipulation was in fact entered into at that time, and the circuit court's order dated January 16, 1996, incorporates the in-court stipulation.

from January 16, 1996, to pay the balance of the purchase price to complete the sale.

¶ 11. On January 12, 1996, GMAC and the Gisvolds agreed to amend their stipulation and extend the Gisvolds' redemption period for an additional two days. The circuit court approved the stipulation on January 12, 1996, and amended its original order in light of the fact that January 15, 1996, was a federal holiday. Because all banks would be closed on that day, it would impact the Gisvolds' ability to transfer funds to redeem the property. The specific terms of the amended order provided that if the Gisvolds did not redeem the property by January 17, 1996, at 4:00 p.m., the foreclosure sale would be approved and confirmed effective January 18, 1996, and Cudd and Claycomb would thereafter be given ten days to deposit the remaining balance of the purchase price with the clerk of courts to complete the sale.

¶ 12. On January 17, 1996, approximately three hours before the Gisvolds' redemption period was to expire, Michael Gisvold filed yet another bankruptcy petition, seeking relief under Chapter 13 of the Bankruptcy Code. The bankruptcy petition was voluntarily dismissed on March 12, 1996. Cudd and Claycomb did not receive notice of the bankruptcy dismissal.

¶ 13. On March 19, 1996, in an attempt to redeem their property, the Gisvolds paid the balance due on their mortgage to the clerk of courts for St. Croix County. It was only after the Gisvolds made this payment that Cudd and Claycomb became aware the bankruptcy petition had been dismissed. At no point during the period between the December 27, 1995, confirmation hearing and the Gisvolds' attempt to redeem the property on March 19, 1996, did Cudd and

Claycomb submit the balance of the purchase price to the clerk of courts to complete the sale.

¶ 14. GMAC brought a motion for a determination of whether the Gisvolds had successfully redeemed their property or whether Cudd and Claycomb still had a right to purchase the property. GMAC took no position regarding either party's right to the property. The circuit court determined that the period allowed for redemption in accord with the stipulation had expired and, therefore, the Gisvolds had not properly redeemed the property. The circuit court further concluded that Cudd and Claycomb's failure to submit the purchase price within ten days of the confirmation of the sale was excusable in light of the fact that they had not been notified of the dismissal of the bankruptcy petition and thus did not know when the ten-day period for submitting the balance of the purchase price expired. The circuit court exercised its discretion and held that Cudd and Claycomb should be afforded an opportunity to purchase the property. Accordingly, the circuit court ordered the sale confirmed as of June 5, 1996, and determined Cudd and Claycomb had ten days from that date to submit the balance of the purchase price.[5] Within the time allowed, Cudd and Claycomb submitted the balance to complete the purchase.

---

[5] The record does not include a hearing transcript dated June 5, 1996. A detailed review of the record and discussions with the St. Croix County clerk of courts lead us to conclude that Record 19 is a transcript from the June 5, 1996, hearing but was erroneously dated as a transcript from a February 29, 1996, hearing. No hearing occurred on February 29, 1996, in this case. The subject matter referenced in Record 19 and a review of the St. Croix circuit court hearing minutes evinces that Record 19 is, in fact, a transcript from the June 5, 1996, hearing.

¶ 15. The court of appeals reversed, concluding the circuit court does not have the equitable authority to waive a purchaser's non-compliance with Wis. Stat. § 846.17. The court of appeals held that the language of the statute, requiring forfeiture of the deposit and resale of the property if a purchaser does not comply with the ten-day payment period, is mandatory. The court of appeals determined that although a circuit court has discretion in confirming a foreclosure sale, that discretion does not extend to granting equitable relief to Cudd and Claycomb in violation of the statutory mandate commanding forfeiture and resale. The court of appeals further determined that the Gisvolds validly redeemed the property, and that because Cudd and Claycomb failed to tender the balance of the purchase price within the time required, they forfeited their ten percent deposit.

¶ 16. We are presented with five issues arising from the foregoing facts, some of which are interrelated. First, did the Gisvolds properly redeem the property when they tendered the balance of their mortgage to the clerk of courts on March 19, 1996? Second, is the language of Wis. Stat. § 846.17, which commands forfeiture of a purchaser's deposit and resale of the property, mandatory or directory? Third, if we determine the language of Wis. Stat. § 846.17 is mandatory, does the circuit court have the equitable authority to excuse a purchaser's non-compliance with Wis. Stat. § 846.17? Fourth, did Cudd and Claycomb comply with Wis. Stat. § 846.17? Fifth, if we determine Cudd and Claycomb did not comply with Wis. Stat. § 846.17, have they forfeited their ten percent down payment? Each of these issues will be addressed in turn.

## II.

¶ 17. We first consider whether the Gisvolds successfully redeemed their property. Because the relevant facts are undisputed, this is a question of law and one this court reviews de novo. *See State v. Williams*, 104 Wis. 2d 15, 21–22, 310 N.W.2d 601 (1981).

¶ 18. The Gisvolds' rights with respect to redemption of the property were defined pursuant to the provisions of the stipulations between themselves and GMAC, which were incorporated into the circuit court's orders. The original stipulation was entered into at the December 27, 1995, hearing and constituted a binding in-court stipulation pursuant to Wis. Stat. § 807.05.[6] The amended stipulation, which was signed by the parties and approved by the court on January 12, 1996, was also binding with respect to the Gisvolds' redemption rights since it was made in writing and subscribed by the parties' attorneys. *See* Wis. Stat. § 807.05. Therefore, the amended stipulation and order provides a basis for a determination of the date upon which the Gisvolds' redemption rights expired. *See Wyandotte Chem. Corp. v. Royal Elec. Mgf. Co., Inc.*, 66 Wis. 2d 577, 589, 225 N.W.2d 648 (1975); *Thayer v. Federal Life Ins. Co.*, 217 Wis. 282, 285–86, 258 N.W. 849 (1935).

---

[6] Wis. Stat. § 807.05 states:

**Stipulations.** No agreement, stipulation, or consent between the parties or their attorneys, in respect to the proceedings in an action or special proceeding shall be binding unless made in court or during a proceeding conducted under s. 807.13 or 967.08 and entered in the minutes or recorded by the reporter, or made in writing and subscribed by the party to be bound thereby or the party's attorney.

¶ 19.   The amended stipulation and order set forth January 17, 1997, at 4:00 p.m., as the date and time upon which the Gisvolds' redemption rights would expire. Approximately three hours before their redemption period expired in accord with the stipulation, Michael Gisvold filed a bankruptcy petition. The Gisvolds argue that the filing of the bankruptcy petition did not extend their redemption rights. We disagree.

¶ 20.   It is within our jurisdiction to review whether the bankruptcy petition stayed the foreclosure proceeding as a state court has jurisdiction to determine whether the action pending before it is subject to a stay under the Bankruptcy Code. *See State v. Weller*, 189 B.R. 467, 471 (Bankr. E.D. Wis. 1995); *see also In re Cummings*, 201 B.R. 586, 588 (Bankr. S.D. Fla. 1996); *Board of Directors v. Resolution Trust Corp.*, 161 B.R. 860, 862 (Bankr. D.C. 1993). The interpretation of a federal statute is an issue of law, which this court reviews de novo. *See Franklin v. Housing Auth. of Milwaukee*, 155 Wis. 2d 419, 425–26, 455 N.W.2d 668 (Ct. App. 1990).

¶ 21.   Under the automatic stay provision of the Bankruptcy Code, Michael Gisvold's bankruptcy filing stayed the commencement or continuation of any action or proceeding against him. *See* 11 U.S.C. § 362(a)(1).[7] The language of § 362 is very broad and provides for the stay of virtually any type of creditor activity against the debtor or the debtor's estate. *See Collier on Bankruptcy* (Lawrence P. King et al. eds., 15th ed. 1997). The stay is automatic and is not premised on notice to any party, including the creditor.

---

[7] All future references to the United States Code will be to the 1995 version.

*See id.* It applies to prevent the continuation of a foreclosure proceeding "[a]s long as the debtor retains any legal or equitable interest in property. . . ." Arthur M. Moglowsky et al., *Wisconsin Mortgage Foreclosures* 265 (1989). The provisions of § 362 stay proceedings against the debtor until the time the bankruptcy case is closed, or until the time the bankruptcy case is dismissed, whichever is earlier. *See* 11 U.S.C. § 362(c)(2).

¶ 22. Notwithstanding the broad application of § 362, some federal courts have held, and there is a strong argument, that § 362 does not work to indefinitely stay a redemption period. *See Goldberg v. Tynan*, 773 F.2d 177 (7th Cir. 1985); *Johnson v. First Nat. Bank of Montevideo, Minn.*, 719 F.2d 270, 277 (8th Cir. 1980), *cert. denied* 105 S. Ct. 1015 (1984). Rather, when the automatic stay provisions of § 362 become effective, "time deadlines for debtors. . .are tolled" pursuant to 11 U.S.C. § 108. Richard S. Ralston, *Bankruptcy Stays: A Practitioner's Guide to Stays and Relief from Stays* 37 (1990). Section 108(b) states, in pertinent part:

> (b)  . . .if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor. . .may. . .cure a default, and such period has not expired before the date of the filing of the petition, the trustee may only. . .cure. . .before *the later of—*
> (1)  the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> (2)  60 days after the order for relief.

(Emphasis supplied.)

¶ 23. The Seventh Circuit Court of Appeals addressed the issue of whether § 362 stays, or § 108(b) tolls, the debtor's redemption period in *Goldberg v. Tynan*, 773 F.2d 177 (7th Cir. 1985). The *Tynan* court determined that in a foreclosure action under Illinois mortgage law "when a petition in bankruptcy is filed before the expiration of the applicable state redemption period, § 108(b) extends the redemption period for 60 days from the commencement of bankruptcy proceedings." *Id.* at 179. The *Tynan* court found persuasive the reasoning of the Eighth Circuit Court of Appeals in *Johnson*, 719 F.2d at 277, wherein the court determined that § 362 does not operate to stay the statutory redemption period set forth under Minnesota law, and that § 108 governs the running of the statutory redemption period. The *Johnson* court recognized that an analysis of whether § 362 stays the redemption period or § 108 tolls the redemption period must be done in conjunction with an analysis of the underlying state mortgage law as the mortgagor's rights at the time the bankruptcy petition is filed are relevant to such a determination. *See id.* at 276–77.

¶ 24. There is no decision from the Seventh Circuit Court of Appeals addressing the issue of the application of § 362 or § 108 to a mortgagor's redemption rights under Wisconsin law. We decline to decide whether the appropriate application is § 362 or § 108 because we conclude the Gisvolds failed to redeem the property under an analysis of either section.

¶ 25. At the time the bankruptcy petition was filed at approximately 1:00 p.m. on January 17, 1996, GMAC and the Gisvolds had entered into an agreement extending the Gisvolds' redemption period

to 4:00 p.m. on January 17, 1996. If we were to determine that § 362 stayed the Gisvolds' redemption rights under 11 U.S.C. § 362(c)(2)(B), the stay was lifted on March 12, 1996—the day the bankruptcy petition was dismissed. Arguably, the Gisvolds had an additional three hours after the bankruptcy petition was dismissed to redeem the property as that was the amount of time left pursuant to the amended stipulation and order when the bankruptcy petition was filed. The exact time calculation is irrelevant, however, as the Gisvolds did not pay the balance of their mortgage until March 19, 1996—seven days after their redemption rights expired if a § 362 analysis is utilized.

¶ 26.   Under 11 U.S.C. § 108(b), the Gisvolds would have had 60 days from the date of the filing of the bankruptcy petition to redeem the property. Rule 6(a) of the Federal Rules of Civil Procedure sets forth the procedures for computing a period of time under federal law. The relevant portions of Rule 6(a) state that in computing time periods, the "day of the act,. . .shall not be included" but the "last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday. . . ." The day of the act was the date on which the bankruptcy petition was filed—January 17, 1996. *See Tynan*, 773 F.2d at 179. Therefore, January 18, 1996, was the first day of the 60-day period. Sixty days from that date was March 17, 1996. Since March 17, 1996, was a Sunday, we are unable to count that date as the last day of the time period. *See* FED. R. CIV. P. 6(a). Therefore, March 18, 1996, was the last day upon which the Gisvolds could have redeemed the property.[8] The Gisvolds did not pay

---

[8] In their brief, Cudd and Claycomb argue that the Gisvolds did not redeem the property pursuant to 11 U.S.C. § 108

the balance of their mortgage until March 19, 1996—one day after their redemption rights expired if a § 108 analysis is utilized.[9]

¶ 27.   The Gisvolds were fully aware of when their redemption rights ended. They were present at the December 27, 1995, hearing and were parties to the first stipulation. Similarly, the Gisvolds were parties to the amended stipulation and were apprised of the order approving the extension of their redemption period for two additional days. Finally, as the party initiating the January 17, 1996, bankruptcy proceeding, Michael Gisvold was also aware of the date the bankruptcy petition was filed as well as the date the bankruptcy petition was dismissed.

¶ 28.   We recognize that redemption is remedial in nature and should be liberally construed in favor of the debtor. *See State Central Credit Union v. Bigus*, 110 Wis. 2d 237, 241, 304 N.W.2d 148 (Ct. App. 1980); *Hobl v. Lord*, 157 Wis. 2d 13, 20, 458 N.W.2d 536 (Ct.

---

because they did not cure the mortgage default prior to the date the bankruptcy petition was dismissed. The language of § 108 (b) does not address application of the tolling provisions in an instance where the bankruptcy petition is dismissed, and we find it unnecessary to consider the issue. The bankruptcy petition was dismissed on March 12, 1996, and the 60-day time period would not have expired until March 18, 1996. We reach our conclusion in consideration of the 60-day time period, which encompasses the date of the dismissal of the bankruptcy petition.

[9] The Gisvolds argue that 11 U.S.C. § 108(b) does not extend their redemption rights as debtors because the specific language indicates that only the "trustee" may cure a default. This analysis is inaccurate as the term "trustee" properly includes any "debtor in possession." *See Johnson v. First Nat'l Bank of Montevideo*, 719 F.2d 270 (8th Cir. 1983); *In re Flying S. Land & Cattle Co., Inc.*, 77 B.R. 183 (Bankr. D. Nev. 1987).

App. 1990) *rev'd on other grounds* 162 Wis. 2d 226, 470 N.W.2d 265 (1991), *cert. denied Lord v. Farm Credit Bank of St. Paul*, 502 U.S. 968 (1991). However, the Gisvolds were given ample opportunity via numerous bankruptcy filings[10] and stipulations with GMAC to redeem the property. Their redemption rights were defined pursuant to the terms of the amended stipulation and order and were extended by the filing of the bankruptcy petition. They failed to redeem the property within the time provided. We therefore conclude that the Gisvolds' payment of their mortgage balance on March 19, 1996, was not a proper redemption of the property.

### III.

¶ 29.  We next consider whether the language of Wis. Stat. § 846.17 pertinent to this dispute is mandatory or directory. This is an issue of statutory interpretation which this court reviews de novo. *See Cross v. Soderbeck*, 94 Wis. 2d 331, 340, 288 N.W.2d 779 (1980).

¶ 30.  The objective in interpreting statutory language is to identify and give effect to the intent of the legislature. *See Stockbridge School Dist. v. Dep't of Pub. Instruction Sch. Dist. Boundary Appeal Bd.*, 202 Wis. 2d 214, 219, 550 N.W.2d 96 (1996). In an attempt to construe the legislature's intent, we first consider the plain language of the statute. *See id.* at 220 (quoting *Jungbluth v. Hometown, Inc.*, 201 Wis. 2d 320,

---

[10] We note that it is for the Bankruptcy court, not this court, to impose sanctions where there has been apparent abuse of the Bankruptcy Code.

327, 548 N.W.2d 519 (1996)). If the meaning of the statutory language is clear, we will not look outside the language of the statute to ascertain legislative intent. *See Ball v. Dist. No. 4 Area Board of Vocational Technical, and Adult Educ.*, 117 Wis. 2d 529, 537–38, 345 N.W.2d 389 (1984).

¶ 31. The provisions of Wis. Stat. § 846.17 relevant to this dispute state:

> Upon any such sale being made the sheriff. . .*shall* make and execute to the purchaser. . .a deed of the premises sold . . .; and the purchaser. . .*shall* be let into the possession of the premises so sold on production of such deed or a duly certified copy thereof, and the court *may*, if necessary, issue a writ of assistance to deliver such possession. Such deed. . .*shall* be. . .held by the clerk until the confirmation of the sale . . ., and upon the confirmation thereof the clerk of the court *shall* thereupon pay to the parties entitled thereto, or to their attorneys, the proceeds of the sale, and *shall* deliver to the purchaser. . .such deed upon compliance by such purchaser with the terms of such sale, and the payment of any balance of the sale price to be paid. *In the event of the failure of such purchaser to pay any part of the purchase price remaining to be paid within 10 days after the confirmation of such sale, the amount so deposited shall be forfeited and paid to the parties who would be entitled to the proceeds of such sale as ordered by the court, and a resale shall be had of said premises. . . .*

(Emphasis added.)

¶ 32. The general rule in interpreting statutory language is that "the word 'shall' is presumed mandatory when it appears in a statute." *Karow v.*

*Milwaukee Co. Civil Serv. Comm'n*, 82 Wis. 2d 565, 570, 263 N.W.2d 214 (1978) (citing *Scanlon v. Menasha*, 16 Wis. 2d 437, 443, 114 N.W.2d 791 (1962)). Further support is given to a mandatory interpretation of "shall" when the legislature uses the words "shall" and "may" in a particular statutory section, indicating the legislature was aware of the distinct meanings of the words. *See Karow*, 82 Wis. 2d at 571.

¶ 33. The language of Wis. Stat. § 846.17, requiring forfeiture and resale of the foreclosed property, is preceded by the word "shall," evincing the legislature's intent that the language is mandatory. Furthermore, the legislature used the word "may" as well as "shall" in Wis. Stat. § 846.17.[11] Therefore, we "can infer that the legislature was aware of the different denotations and intended the words to have their precise meanings." *Id.* Hence, the plain language of Wis. Stat. § 846.17 indicates the legislature intended forfeiture and resale to be mandatory if the purchaser does not comply with the ten-day payment requirement.[12]

---

[11] There are also numerous other sections within Wis. Stat. ch. 846 wherein the legislature specifically used both "may" and "shall." *See, e.g.*, Wis. Stats. §§ 846.02, 846.04, 846.07, 846.08, 846.09, 846.10, 846.101, 846.102, 846.103, 846.12, 846.13, 846.14, 846.15, 846.16, 846.162.

[12] The Gisvolds urge us to undertake the analysis of *Karow v. Milwaukee Co. Civil Serv. Comm'n*, 82 Wis. 2d 565, 263 N.W.2d 214 (1978) to support their contention that the statutory language is mandatory. In *Karow*, we set forth factors to consider when determining if a statutory provision is mandatory or directory, despite the legislature's use of the word "shall." The application of *Karow* is limited to cases where the disputed statutory language sets a time limitation for the taking of some action. *See F.T. v. State*, 150 Wis. 2d 216, 222–23, 441 N.W.2d 322 (Ct. App. 1989). In each of the cases where a

¶ 34. We are not precluded from determining that the pertinent language of Wis. Stat. § 846.17 is directory if we find such "construction is demanded by the statute in order to carry out the clear intent of the legislature." *City of Wauwatosa v. Milwaukee Co.*, 22 Wis. 2d 184, 191, 125 N.W.2d 386 (1963). However, the parties do not offer, and our research has not revealed, any legislative history lending support to the contention that the legislature intended its command to the court to be directory.

¶ 35. We therefore conclude that the plain language of Wis. Stat. § 846.17 is mandatory insofar as it requires the court to order forfeiture of the deposit and resale of the premises if the purchaser does not submit the balance of the purchase price within ten days of the confirmation of the sale.

## IV.

¶ 36. We next address whether the circuit court has the equitable authority to excuse a purchaser's

Wisconsin court has applied *Karow*, "shall" was used to directly reference a statutory time limitation. *See, e.g., State v. R.R.E.*, 162 Wis. 2d 698, 707, 470 N.W.2d 283 (1991); *Eby v. Kozarek*, 153 Wis. 2d 75, 79, 450 N.W.2d 249 (1990). In the present case, there is no dispute that the statutory language requiring a purchaser to submit payment within ten days of confirmation is mandatory. The dispute concerns whether the circuit court is bound by the language requiring forfeiture of the deposit and resale of the property. The purchasers' failure to comply with the time limitation triggers forfeiture and resale, yet the actual imposition of forfeiture and resale, which is the language preceded by "shall," is not set forth in relation to any time limitation. Therefore, we decline to apply *Karow*.

non-compliance with the ten-day payment requirement, notwithstanding our determination that the language of Wis. Stat. § 846.17, requiring forfeiture and resale, is mandatory. The issue of whether judicial authority exists is a question of law and therefore one which this court reviews de novo. *See Brier v. E.C.*, 130 Wis. 2d 376, 381, 387 N.W.2d 72 (1986).

¶ 37. Foreclosure proceedings are equitable in nature, and the circuit court has the equitable authority to exercise discretion throughout the proceedings. *See Family Sav. & Loan Ass'n v. Barkwood Landscaping Co., Inc.*, 93 Wis. 2d 190, 202, 286 N.W.2d 581 (1980). This discretion extends even after confirmation of sale, if necessary to provide " 'that no injustice shall be done to any of the parties.' " *Id.* (quoting *Strong v. Catton*, 1 Wis. 408, 424 (1853)). A circuit court has the "authority to grant equitable relief, even in the absence of a statutory right." *Breier*, 130 Wis. 2d at 388–89. Moreover, a circuit court's equitable authority may not be limited absent a "clear and valid" legislative command. *State v. Excel Management Servs.*, 111 Wis. 2d 479, 490, 331 N.W.2d 312 (1983).

¶ 38. This equitable authority is not unfettered, however. Thus, a court's exercise of equitable authority is only appropriate when a legally protected right has been invaded. *See Breier*, 130 Wis. 2d at 389. Additionally, a court may not exercise its equitable authority if such exercise would ignore a statutory mandate. *See First Federated Sav. Bank v. McDonah*, 143 Wis. 2d 429, 434, 422 N.W.2d 113 (Ct. App. 1988).

¶ 39. We have already determined that the language of Wis. Stat. § 846.17, requiring forfeiture of

a purchaser's deposit and resale of the property if the purchaser does not comply with the ten-day payment period, is mandatory. Therefore, the circuit court has no equitable authority to grant relief to a purchaser who fails to comply with the ten-day payment period set forth in Wis. Stat. § 846.17. *See id.*

### V.

¶ 40. We now consider whether Cudd and Claycomb complied with the statutory mandates of Wis. Stat. § 846.17. The application of a statute to a particular set of facts is a question of law and one which this court reviews de novo. *See Kania v. Airborne Freight Corp.*, 99 Wis. 2d 746, 758, 300 N.W.2d 63 (1981).

¶ 41. We conclude that Cudd and Claycomb did comply with the requirements of Wis. Stat. § 846.17. This decision is premised on our determination that Wis. Stat. § 846.165 contemplates notice to the purchaser at a foreclosure sale of when the sale is confirmed, thereby notifying the purchaser that the mortgagor's redemption period has ended and apprising the purchaser of when the ten-day time period for payment will expire. Because Cudd and Claycomb did not receive proper notice of when the GMAC's redemption period ended and when the ten-day period for payment expired until June 5, 1996, there was no binding, effective confirmation of sale until that date. After the confirmation on June 5, 1996, Cudd and Claycomb complied with the requirements of Wis. Stat. § 846.17 by submitting the balance of the purchase price within the ten-day time period allowed.

¶ 42.   Wisconsin Statutes ch. 846 governs the procedures to be followed in a real estate foreclosure proceeding. The language of ch. 846 convinces us that the legislature contemplated notice to purchasers of actions that may affect their rights and obligations with respect to confirmation of a foreclosure sale. Specifically, Wis. Stat. § 846.165[13] states that before a foreclosure sale may be confirmed, all parties appearing in the action must be given at least five days notice of when the motion for confirmation of sale will be heard.

¶ 43.   Although the purchaser is not necessarily a party appearing in the foreclosure action for purposes of the judgment and sale, "[t]he purchaser at the sale is a party interested in the proceedings to confirm the sale." *Shuput v. Lauer*, 109 Wis. 2d 164, 171, 325 N.W.2d 321 (1982). The purchaser is a "quasi-party in the action confirming the foreclosure sale and may appeal court orders affecting his or her rights with respect to the confirmation." *Gumz v. Chickering*, 19 Wis. 2d 625, 632, 121 N.W.2d 279 (1963). Accordingly, the purchaser is entitled to notice of the confirmation hearing. *See* John S. Goodland, *Mortgage and Land Contract Foreclosures in Wisconsin* § 9.02 (1989). The effect of providing notice to the purchaser is, in part, to inform the purchaser of the confirmation and thereby inform the purchaser of the expiration of the

---

[13] Wis. Stat. § 846.165 states, in relevant part:

**Application for confirmation of sale and for deficiency judgment. (1)**   No sale on a judgment of mortgage foreclosure shall be confirmed unless 5 days' notice has been given to all parties that have appeared in the action. . . .the notice shall state, in addition to other matters required by law, the amount of the judgment, the amount realized upon the sale, the amount for which personal judgment will be sought against the several parties naming them, and the time and place of hearing.

mortgagor's redemption rights and the dates encompassed in the purchaser's ten-day payment period.

¶ 44. Generally, when a hearing is held to confirm a foreclosure sale, confirmation of the sale is not stayed by stipulation or otherwise. Rather, the confirmation becomes effective immediately, and the order is entered at or following the hearing. In the standard scenario the purchaser has received notice of the confirmation hearing; the purchaser has been given an opportunity to be present at the hearing; the purchaser is aware that the sale is confirmed at or soon after the hearing; the purchaser is aware that the redemption period is over, and the balance of the purchase price must be submitted to the clerk of courts within ten days.

¶ 45. In the present case, Cudd and Claycomb were not afforded the notice contemplated under Wis. Stat. § 846.165. At the confirmation hearing on December 27, 1995, GMAC and the Gisvolds agreed, and the court approved, staying confirmation of the sale until January 15, 1996. Cudd and Claycomb apparently received notice of the confirmation hearing and, accordingly, Cudd was present at the hearing. Cudd and Claycomb were therefore apprised of the terms of the original in-court stipulation and court order, defining the date of confirmation of the sale, the expiration of the Gisvolds' redemption rights, and Cudd and Claycomb's right to purchase the property.

¶ 46. Cudd and Claycomb received no notice of the events which occurred after the confirmation hearing that affected their rights to the foreclosed property. Confirmation of the order was stayed an additional two days in accord with an amended stipulation entered into between GMAC and Gisvold.

Cudd and Claycomb were not parties to this second stipulation, and there is no evidence in the record that Cudd and Claycomb were notified of the stipulation or amended order. The stipulation and amended order did affect their rights to purchase the property because all terms and conditions of the original order were extended an additional two days. Consequently, because the stipulation provided the Gisvolds an extended period for redemption, Cudd and Claycomb's right to purchase the property was delayed. Michael Gisvold's act of filing a Chapter 13 bankruptcy petition also affected Cudd and Claycomb's right to purchase the property because the bankruptcy filing extended the Gisvolds' redemption period. *See* 11 U.S.C. §§ 108, 362. Accordingly, Cudd and Claycomb were entitled to notice of these events insofar as they affected their right to complete the purchase of the property.

¶ 47.   GMAC's motion to bring the matter before the circuit court for a determination of rights was the appropriate action to take as it provided notice to all parties appearing in the action of the events affecting their respective property interests. Furthermore, as mortgagee, GMAC was the appropriate party to bring such motion before the circuit court. Although all parties were affected by the confusing set of circumstances presented in this case, GMAC is the party initiating the foreclosure proceeding and arguably would have the greatest interest in a resolution of the proceedings so that the property debt could be satisfied, either by the mortgagor or the purchasers.

¶ 48.   In response to GMAC's motion, the circuit court held hearings on May 3, 1996, and June 5, 1996. The hearings provided all parties, including Cudd and Claycomb, notice of the events surrounding the

confirmation. Because Cudd and Claycomb did not receive the proper notice until that time, as is contemplated by Wis. Stat. § 846.165, there was no valid confirmation of sale until the June 5, 1996, hearing.[14]

¶ 49. In its June 5, 1996, order, the circuit court approved and confirmed the foreclosure sale. The circuit court ordered that Cudd and Claycomb would have ten days from that date to submit the balance of the purchase price to complete the sale. In the event Cudd and Claycomb did not so comply, the court order indicated that their deposit would be forfeited and an action to initiate a new sale would commence. Cudd and Claycomb submitted the payment to the clerk of courts within ten days of the confirmation and, therefore, complied with the statutory provisions of Wis. Stat. § 846.17.

## VI.

¶ 50. Because we determine that Cudd and Claycomb completed their purchase of the foreclosed property in compliance with Wis. Stat. § 846.17, it is not necessary that we reach the issue whether Cudd and Claycomb forfeited their deposit.

---

[14] We recognize that, generally, a mortgagor may redeem the property until a foreclosure sale is confirmed. *See Gerhardt v. Ellis*, 134 Wis. 191, 196 (1908). In the present case, our determination that the sale was not confirmed until June 5, 1996, does not extend the Gisvolds' redemption period. The Gisvolds' redemption period was defined pursuant to the terms of binding stipulations voluntarily entered into and incorporated into the circuit court's orders. *See* Wis. Stat. § 807.05.

## VII.

¶ 51. In sum, we conclude that the respondents failed to successfully redeem their property. We further conclude that the language of Wis. Stat. § 846.17 is mandatory insofar as it directs forfeiture of a purchaser's deposit and resale of the property in a foreclosure proceeding, if the purchaser does not submit the balance of the purchase price within ten days of the confirmation of the sale. Therefore, the circuit court has no equitable authority to waive a purchaser's non-compliance with the ten-day payment period set forth in Wis. Stat. § 846.17. We also conclude that Cudd and Claycomb have a right to notice of when the sale is confirmed, when the Gisvolds' redemption period ends, and when their ten-day payment period expires, as contemplated by Wis. Stat. § 846.165. Finally, we conclude that Cudd and Claycomb complied with the directives of Wis. Stat. § 846.17 by submitting the balance of the purchase price within ten days of the effective date of confirmation of the sale, which was June 5, 1996.

*By the Court.*—The decision of the court of appeals is reversed.