FIRST BANKING CENTER, Plaintiff-Respondent,

v.

TWELFTH STREET INVESTORS LLC,
Defendant-Appellant,†

Elaine C. BIEHN, PH&I Supply Company,
Precision Ceiling Systems and
Big Buick Building Centers, Inc., Defendants,

DEMARK, KOLBE & BRODEK, S.C.,
Defendant-Co-Appellant,†

BROZAK HOLDINGS LLC, Defendant-Respondent.

Court of Appeals

*No. 2010AP646. Submitted on briefs April 26, 2011.
—Decided June 15, 2011.*

2011 WI App 103

(Also reported in 805 N.W.2d 381.)

† Petition for Review denied 12/31/11.

On behalf of the defendant-appellant and the defendant-co-appellant, the cause was submitted on the briefs of *Thomas C. Binger* of *DeMark, Kolbe & Brodek, S.C.*, Racine.

On behalf of the plaintiff-respondent and the defendant-respondent, the cause was submitted on the brief of *Thomas A. Camilli, Jr.* of *Godin, Geraghty &*

*Puntillo, S.C.* and *Gregg N. Guttormsen* of *Guttormsen Law Office, LLC*, Kenosha.

Before Brown, C.J., Neubauer, P.J., and Reilly, J.

¶ 1. REILLY, J. This foreclosure matter returns to us for a second time. First Banking Center was granted a judgment of foreclosure against Twelfth Street Investors LLC. At a subsequent sheriff's sale of the property, Brozak Holdings LLC submitted the highest bid. Twelfth Street Investors challenged the bid price of the sheriff's sale as being too low. The circuit court confirmed the sheriff's sale. Twelfth Street Investors appealed, and the circuit court informed Brozak Holdings not to pay the remaining purchase price amount until the appeals process was completed. This court affirmed the circuit court's confirmation of the sheriff's sale and the case was remitted back to the circuit court. Twelfth Street Investors subsequently argued that Brozak Holdings violated WIS. STAT. § 846.17 (2009–10)[1] by not paying the remaining purchase price in time.[2] Section 846.17 requires that a purchaser of foreclosed property must pay the remaining balance due on the property within ten days of confirmation of the sheriff's sale. The circuit court disagreed and ruled that, after remittitur, the court was required to notify Brozak Holdings when the ten-day period under § 846.17 began to run.

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

[2] The motion was originally filed by DeMark, Kolbe & Brodek, S.C.—Twelfth Street Investors' mortgagee and also the law firm representing Twelfth Street Investors—and subsequently joined by Twelfth Street Investors. As Twelfth Street Investors and the DeMark law firm are both defendants and co-appellants in this case, we shall collectively refer to them as "Twelfth Street Investors."

¶ 2. The issue in this appeal is: after an appellate court affirms the amount of a sheriff's sale and remits the case back to the circuit court, must the circuit court provide the purchaser with notice as to when payment of the remaining balance is due? We agree with the circuit court's conclusion that when an appeal prevents a purchaser of foreclosed property from paying the remaining purchase price within ten days after confirmation of a sheriff's sale per WIS. STAT. § 846.17, the purchaser is entitled to notice from the circuit court as to when the ten-day period begins to run. We affirm the circuit court's order.

## FACTS

¶ 3. First Banking Center was granted a judgment of foreclosure against Twelfth Street Investors on May 30, 2007. A sheriff's sale was held on July 23, 2008, and Brozak Holdings submitted the highest bid at $860,000. Brozak Holdings paid a $100,000 deposit. Twelfth Street Investors challenged the sheriff's sale, arguing that the $860,000 bid price was "shockingly low." On September 4, 2008, the circuit court approved and confirmed the $860,000 amount and ordered Brozak Holdings to pay the remaining $760,000 balance within ten days per WIS. STAT. § 846.17. Six days later, Twelfth Street Investors filed an appeal and requested that the circuit court stay its order confirming the sheriff's sale while the appeal was pending. Although the circuit court did not issue a formal stay order, the record indicates that the circuit court informed Brozak Holdings not to pay the remaining $760,000 while the appeal was pending.

¶ 4. On June 24, 2009, this court affirmed the circuit court's order as we held that the circuit court appropriately exercised its discretion in approving

153

Brozak Holding's $860,000 bid and confirmation of the sheriff's sale. The Wisconsin Supreme Court denied Twelfth Street Investors' petition for review on September 24, 2009. We remitted the record back to the circuit court the next day.

¶ 5. After the case was sent back to the circuit court, First Banking Center filed a motion on October 19, 2009, seeking a "declaration of interest in real property" and an order "quieting title to real property" so as to remedy a discrepancy in the legal description of the property. That same day, First Banking Center also filed a motion for an "amended order establishing the amount of indebtedness." On November 23, 2009, the circuit court issued an order clarifying the discrepancies in the legal description of the property and also issued an order setting forth the amount that Twelfth Street Investors owed First Banking Center. Then, on January 13, 2010, Twelfth Street Investors filed a motion to vacate the sheriff's sale. In its motion, Twelfth Street Investors argued that Brozak Holdings violated the terms of WIS. STAT. § 846.17 by not paying the remainder of the purchase price in time, although Twelfth Street Investors did not state when it thought the ten-day period began to run.

¶ 6. On March 5, 2010, the circuit court denied Twelfth Street Investors' motion after the court ruled that it was required to notify Brozak Holdings when the ten-day clock on WIS. STAT. § 846.17 began to tick. As the circuit court never actually told Brozak Holdings to pay the remaining $760,000 balance, the court held that Brozak Holdings did not violate § 846.17. On the day of its decision, the circuit court instructed Brozak Holdings to pay the remaining balance within ten days and Brozak Holdings complied. Twelfth Street Investors appeals.

## STANDARD OF REVIEW

██

¶ 7. This case requires us to interpret Wis. Stat. § 846.17. The interpretation of a statute and its application to a set of facts is a question of law that we review de novo. *Xerox Corp. v. DOR*, 2009 WI App 113, ¶ 46, 321 Wis. 2d 181, 772 N.W.2d 677, *review denied*, 2010 WI 5, 322 Wis. 2d 123, 779 N.W.2d 177 (Dec. 14, 2009) (No. 2007AP2884).

## DISCUSSION

██

¶ 8. We start, as we must, with the statutory language at issue. *See State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶¶ 44–45, 271 Wis. 2d 633, 681 N.W.2d 110. The relevant portion of Wis. Stat. § 846.17 provides:

> In the event of the failure of [a foreclosed property] purchaser *to pay any part of the purchase price remaining to be paid within 10 days after the confirmation of* [a sheriff's] *sale,* the amount so deposited shall be forfeited and paid to the parties who would be entitled to the proceeds of such sale as ordered by the court, and a resale shall be had of said premises . . . . (Emphasis added.)

In other words, a buyer of a foreclosed property has ten days after the confirmation of the sale to pay the remaining balance of the purchase price. Twelfth Street Investors argues that Brozak Holdings failed to comply with this provision because Brozak Holdings did not pay the remaining $760,000 of its purchase price within ten days after we remitted the record back to the circuit court. The problem with this argument is that § 846.17

refs to a ten-day window after the confirmation of a *sheriff's sale*—the statute says nothing about what happens after remittitur.

¶ 9. Furthermore, the record indicates that Brozak Holdings attempted to comply with Wis. Stat. § 846.17's ten-day requirement. When Brozak Holdings tried to pay the remaining balance on the purchase price, it was informed by the circuit court's clerk that it should wait until Twelfth Street Investors' appeal challenging the purchase price was resolved. The case was eventually remitted back to the circuit court on September 25, 2009, more than one year after the circuit court confirmed the sheriff's sale. Twelfth Street Investors believes that the ten-day period began at this point. Its argument essentially asks this court to substitute the word "remittitur" for the phrase "the confirmation of such sale" in § 846.17. As the legislature and not the judiciary writes the laws, we will not read into § 846.17 language that does not exist. *See State v. Engler*, 80 Wis. 2d 402, 410, 259 N.W.2d 97 (1977) ("Given the plain and unmistakable language of the statute, we are obliged to apply the law as it is written, not as it might well have been written, or as it might someday be rewritten by the state legislature.").

¶ 10. Our holding is bolstered by the supreme court's decision in *GMAC Mortg. Corp. v. Gisvold*, 215 Wis. 2d 459, 572 N.W.2d 466 (1998). The facts of *Gisvold* were, in the supreme court's own words, "lengthy and somewhat confusing." *Id.* at 464. In 1992, Michael and Drue Gisvold defaulted on a home mortgage held by GMAC. *Id.* A foreclosure judgment was entered in favor of GMAC the next year. *Id.* A sale of the home that was originally scheduled for November 1993 did not occur because Drue filed for bankruptcy protection. *Id.* After Drue voluntarily dismissed his bank-

ruptcy petition in January 1994, a foreclosure sale was held on March 15, 1994. *Id.* Randall Cudd and Jim Claycomb were the successful bidders at the sale. *Id.* The sale was confirmed by the circuit court but later vacated when no objection was made to the Gisvolds' motion arguing that the Gisvolds did not receive sufficient notice of the confirmation hearing. *Id.* at 464–65.

¶ 11. Another confirmation hearing was cancelled when Michael filed a bankruptcy petition. *Id.* at 465. The circuit later denied GMAC's motion to confirm the original foreclosure sale after the confirmation hearing was rescheduled. *Id.* A second foreclosure sale was eventually conducted on June 13, 1995. *Id.* Cudd and Claycomb were once again the high bidders. *Id.* A confirmation hearing was scheduled for June 27, 1995, but was stayed due to Drue filing a bankruptcy petition. *Id.* Drue voluntarily dismissed the bankruptcy petition less than a month later and a confirmation hearing was rescheduled for October 3, 1995. *Id.* at 465–66. This confirmation hearing did not take place because Michael filed for bankruptcy, which he then voluntarily dismissed two weeks later. *Id.*

¶ 12. A third confirmation hearing was scheduled for December 27, 1995. *Id.* The sale of the Gisvold property was confirmed, but the circuit court stayed the confirmation order until January 15, 1996, so as to allow the Gisvolds even more time to redeem their property. *Id.* GMAC and the Gisvolds agreed to extend the deadline until January 17, 1996. *Id.* at 467. Three hours before the January 17 deadline, Michael filed yet another bankruptcy petition. *Id.* He voluntarily dismissed this bankruptcy petition on March 12, 1996, but Cudd and Claycomb were never notified. *Id.* On March 19, 1996, the Gisvolds attempted to redeem their property by paying the remaining balance due on their

157

mortgage. *Id.* It was at this point that Cudd and Claycomb became aware that the January 17, 1996 bankruptcy petition was dismissed. *Id.*

¶ 13. GMAC brought a motion asking the circuit court to determine whether the Gisvolds successfully redeemed their property or whether Cudd and Claycomb still had a right to purchase the property. *Id.* at 468. The circuit court concluded that while Cudd and Claycomb failed to submit the purchase price within ten days of the confirmation of sale, their delay was excusable given that they had not been notified that the January 17, 1996 bankruptcy petition was dismissed. *Id.* Cudd and Claycomb thus did not know when the ten-day period for submitting the balance of the purchase price expired. *Id.* The circuit court exercised its discretion by entering an order on June 5, 1996, confirming the sale and giving Cudd and Claycomb ten days from that date to pay the remaining purchase price, which they did. *Id.* This court, however, reversed, holding that the circuit court does not have the equitable authority to waive a purchaser's noncompliance with WIS. STAT. § 846.17. *Gisvold,* 215 Wis. 2d at 469.

¶ 14. The supreme court reversed the court of appeals and held that Cudd and Claycomb did comply with the requirements of WIS. STAT. § 846.17. *Gisvold,* 215 Wis. 2d at 481. As the sale of the property was not confirmed until the circuit court entered an order on June 5, 1996, Cudd and Claycomb could not have paid the balance of the purchase price before that date. *Id.* The court based its decision on the text and structure of WIS. STAT. ch. 846. Specifically, the court pointed to WIS. STAT. § 846.165, which states that all parties appearing in a foreclosure action must be given at least five days' notice before a foreclosure sale may be confirmed. *Gisvold,* 215 Wis. 2d at 482. The court stated that a

purchaser is entitled to notice of a confirmation hearing as a purchaser "is a party interested in the proceedings to confirm the sale." *Id.* (quoting *Shuput v. Lauer*, 109 Wis. 2d 164, 171, 325 N.W.2d 321 (1982)). As Cudd and Claycomb did not receive notice of the legal maneuverings that occurred after the sale was confirmed on December 27, 1995, they were not afforded the proper notice as required by § 846.165 until the June 5, 1996 order. *Gisvold*, 215 Wis. 2d at 483–85. Therefore, the ten-day period under § 846.17 did not begin to run until June 5, 1996. *Gisvold*, 215 Wis. 2d at 485. As Cudd and Claycomb paid the remaining balance within ten days of the June 5, 1996 confirmation order, they complied with § 846.17. *Gisvold*, 215 Wis. 2d at 485.

¶ 15.　Twelfth Street Investors argues that this case is different than *Gisvold* as Brozak Holdings—unlike Cudd and Claycomb in *Gisvold*—actually had notice of all the intervening events that occurred after the confirmation sale. Brozak Holdings, however, is no different than Cudd and Claycomb—circumstances beyond its control prevented compliance with the confirmation of sale order. After this case was remitted back to the circuit court on September 25, 2009, First Banking Center filed two motions on October 19, 2009:　one requested "a declaration of interest in real property" and an order "quieting title to real property," and the other asked the circuit court to determine Twelfth Street Investors' amount of indebtedness to First Banking Center. Brozak Holdings was justified in awaiting the resolution of these two motions before it paid the remaining $760,000 of the purchase price.

¶ 16.　Wisconsin Stat. § 846.17 does not clarify when the ten-day period for paying the remaining purchase price begins to run after a case is remitted

159

following an appeal. Our decision, however, is guided by the *Gisvold* case. We hold that when the appeals process interrupts a purchaser's ability to pay the remaining balance of the purchase price, the purchaser is entitled, upon remand, to notice from the circuit court as to when the ten-day period begins to run.[3]

## CONCLUSION

■

¶ 17.　The circuit court confirmed the sheriff's sale on September 4, 2008, and ordered Brozak Holdings to pay the remaining purchase price within ten days pursuant to Wis. Stat. § 846.17. Brozak Holdings attempted to comply with this order, but was thwarted by the appeals process. After the case was remitted back to the circuit court, Brozak Holdings was entitled to notice from the circuit court as to when the ten-day payment period under § 846.17 began to run. As Brozak Holdings did not receive this notice until March 5, 2010, it was not required to pay the remaining purchase price before that date. We therefore affirm the circuit court's order.[4]

*By the Court.*—Order affirmed.

■

[3] Twelfth Street Investors argues that we should decide this case using *Hartman v. Winnebago Cnty.*, 216 Wis. 2d 419, 574 N.W.2d 222 (1998). *Hartman*, however, dealt with the timely request of attorney fees after a judgment award and is therefore inapplicable to this case. *See id.* at 425–29. We thus decline to address *Hartman* extensively.

[4] In its brief, Twelfth Street Investors addresses the issue of whether it has standing. As we reject Twelfth Street Investors' arguments on the merits, we need not discuss this issue.