# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2013AP544 |
| COMPLETE TITLE: | The Bank of New York Mellon, fka The Bank of New York, as Trustee for CWABS, Inc. Asset-Backed Certificates, Series 2007-13, |
| | Plaintiff-Respondent-Petitioner, |
| | v. |
| | Shirley T. Carson, |
| | Defendant-Appellant, |
| | Bayfield Financial LLC and Collins Financial Services, |
| | Defendants. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
(Reported at 352 Wis. 2d 205, 841, N.W.2d 573)
(Ct. App. 2013 – Published)
PDC No.: 2013 WI App 153

| | |
|---|---|
| OPINION FILED: | February 17. 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 23, 2014 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | Jane V. Carroll |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | PROSSER, ZIEGLER, GABLEMAN, JJJ., concur. (Opinion filed.) |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

    For the plaintiff-respondent-petitioner, there were briefs by *Valerie L. Bailey-Rihn*, *Katherine Maloney Perhach*, and *Quarles & Brady LLP*, Madison and Milwaukee; and *James W. McGarry*, *Keith Levenberg*, and *Goodwin Procter LLP*, Boston and Washington. Oral argument by *Valerie L. Bailey-Rihn*.

For the defendant-appellant, there was a brief by *April A.G. Hartman*, *Jeffrey R. Myer*, and *Legal Action of Wisconsin*, Inc. Oral argument by *April A.G. Hartman*.

An amicus curiae brief by *Grant F. Langley*, city attorney; *Danielle M. Bergner*, deputy city attorney; and *Kail J. Decker*, assistant city attorney, on behalf of the City of Milwaukee.

An amicus curiae brief by *Catherine M. Doyle*, *Amanda E. Adrian*, and *Legal Aid Society of Milwaukee, Inc.*, on behalf of the Legal Aid Society of Milwaukee.

2015 WI 15

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2013AP544
(L.C. No. 2011CV1330)

STATE OF WISCONSIN        :        IN SUPREME COURT

The Bank of New York Mellon, fka The Bank of New York, as Trustee for CWABS, Inc. Asset-Backed Certificates, Series 2007-13,

       Plaintiff-Respondent-Petitioner,

  v.

Shirley T. Carson,

       Defendant-Appellant,

Bayfield Financial LLC and Collins Financial Services,

       Defendants.

**FILED**

**FEB 17, 2015**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed and cause remanded.*

¶1 ANN WALSH BRADLEY, J. Petitioner, Bank of New York Mellon ("the Bank"), seeks review of a published decision of the court of appeals that reversed the circuit court's denial of Shirley Carson's motion to amend a judgment of foreclosure on

her former home.[1]  She requested that the court find the property to be abandoned and that it order a sale of the property upon expiration of five weeks from the date of entry of the amended judgment.  The court of appeals concluded that the circuit court erroneously determined that it was without authority to grant the motion.

¶2  The Bank asserts that Wis. Stat. § 846.102 (2011-12)[2], the statute governing foreclosure of abandoned properties, does not require it to sell a property after it obtains a judgment of foreclosure and the redemption period has passed.  It maintains that the statute is permissive, not mandatory, and that it cannot be required to sell a property.  The Bank further contends that even if the statute does mandate that the Bank sell the abandoned property after the redemption period, it provides no deadline for doing so.  Thus, the Bank concludes that it is free to execute on its judgment at any time within five years after rendition of the judgment, and the circuit court is without authority to order it to sell the property at a specific time.

¶3  Based on the statute's plain language and context, we conclude that when the court determines that a property is abandoned, Wis. Stat. § 846.102 authorizes the circuit court to

---

[1] Bank of New York v. Carson, 2013 WI App 153, 352 Wis. 2d 205, 841 N.W.2d 573 (reversing judgment of the circuit court for Milwaukee County, Jane V. Carroll, judge).

[2] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

order a mortgagee to bring the property to sale after the redemption period. We further conclude, consistent with the purpose of the statute, that the circuit court shall order the property to be brought to sale within a reasonable time after the redemption period. The circuit court's determination of what constitutes a reasonable time should be based on the totality of the circumstances in each case.

¶4 In this case, the circuit court did not reach the issue of whether the property had been abandoned. Accordingly, we affirm the court of appeals and remand the cause to the circuit court for such a determination and further proceedings.

I

¶5 In 2007, Countrywide Home Loans loaned $52,000 to Carson. As security for the debt, Carson mortgaged her home on Concordia Avenue in Milwaukee, Wisconsin. After Carson defaulted on her payments, Countrywide and Carson entered an agreement modifying the terms of the loan. Subsequently, Carson again defaulted on the loan payments.

¶6 The Bank, as trustee for Countrywide, filed a complaint against Carson, seeking a judgment of foreclosure and sale of the mortgaged premises. Attempts to serve Carson at the Concordia Avenue property were unsuccessful. In his affidavit, the process server observed that the house appeared to be vacant. On his first visit he reported that the garage had been boarded, that the snow was not shoveled, there were no footprints in it, and there was no furniture in the house. Notes from his successive visits state that the snow was still

3

not shoveled and there were still no footprints around the house.

¶7    Thereafter, the Bank published notice of the foreclosure action in a local newspaper.   Carson, who was physically and financially unable to care for the property, did not file an answer or otherwise dispute the foreclosure.   In April 2011, BAC Home Loan Servicing, LP, apparently a loan servicer for Countrywide, filed a City of Milwaukee Registration of Abandoned Property in Foreclosure form for the property.[3]

¶8    The circuit court entered a judgment in favor of the Bank.   It determined that Carson owed the Bank $81,356.59. After acknowledging that the property was not owner occupied, the court directed that the property "shall be sold at public auction under the direction of the sheriff, at any time after three month(s) from the date of entry of judgment."   The judgment also enjoined both parties from committing waste on the premises and specified that in the event the property is abandoned by the defendants, the Bank "may take all necessary steps to secure and winterize the subject property."

¶9    After the judgment was entered, the Bank did not take steps to secure the property.   It was repeatedly burglarized and

---

[3] "Loan servicers are the entities that collect payments for mortgages, provide billing and tax payments to the homeowners, and have sole control over the modification of a loan."   Andrew Peace, Coming Up for Air: The Constitutionality of Using Eminent Domain to Condemn Underwater Mortgages, 54 B.C. L. Rev. 2167, 2178 n.82 (2013).

vandalized. At one point someone started a fire in the garage. Despite an order from the City of Milwaukee Department of Neighborhood Services to maintain the property, the Bank did not do so. Carson received notices of accumulated trash and debris, as well as notices of overgrown weeds, grass, and trees. The City imposed approximately $1,800 in municipal fines on her and she made payments of approximately $25 per month toward the fines.

¶10 By November 2012, more than 16 months after the judgment of foreclosure was entered, the Bank had not sold the property and had no plans to sell it. Carson filed a motion to amend the judgment to include a finding that the property was abandoned and an order that the sale of the premises be made upon expiration of five weeks from the date of entry of the amended judgment, pursuant to Wis. Stat. § 846.102.[4]

¶11 In support of her motion, Carson referenced the affidavit from the process server indicating that the house appeared vacant. She produced her own affidavit stating that she had terminated her utility accounts, that the property had

---

[4] Wisconsin Stat. § 846.102(1) states:

In an action for enforcement of a mortgage lien if the court makes an affirmative finding upon proper evidence being submitted that the mortgaged premises have been abandoned by the mortgagor and assigns, judgment shall be entered as provided in s. 846.10 except that the sale of such mortgaged premises shall be made upon the expiration of 5 weeks from the date when such judgment is entered.

been vandalized, that the doors and windows on the house had been boarded, and that the garage had been damaged by fire. She also produced the form the loan servicer filed with the City of Milwaukee registering the premises as an abandoned property, violation notices from the City indicating that there was trash and debris on the property, a copy of the complaint record from the City, and a re-inspection fee letter from the City.

¶12 The circuit court denied Carson's motion. It observed that Wis. Stat. § 846.102 did not specifically grant it authority to order the Bank to sell the property at a specific time. It explained "I can't find anywhere in the statute [Wis. Stat. § 846.102] that I have the authority to grant the relief that [Carson is] requesting." The court further noted that the statute contemplates that the redemption period be elected by the mortgagee, not the borrower, and questioned whether a mortgagee could be compelled to execute a judgment when someone else is seeking the order. Accordingly, it stated, "I'm specifically finding that I don't have the authority . . . so the motion is denied on those grounds."

¶13 Carson appealed, arguing that under Wis. Stat. § 846.102 the circuit court did have the authority to order sale of the property upon expiration of the redemption period. The court of appeals agreed with Carson. Bank of New York v. Carson, 2013 WI App 153, ¶9, 352 Wis. 2d 205, 841 N.W.2d 573. It determined that "the plain language of the statute directs the court to ensure that an abandoned property is sold without delay, and it logically follows that if a party to a foreclosure

6

moves the court to order a sale, the court may use its contempt authority to do so." Id., ¶13. Accordingly, it reversed the circuit court and remanded the case. Id., ¶16.

II

¶14 This case presents two issues. First, we are asked to determine whether Wis. Stat. § 846.102 authorizes a circuit court to order a mortgagee to bring a property to sale. Second, we are asked whether a court can require a mortgagee to bring a property to sale at a certain point in time. Both questions require us to determine the scope of authority granted to the circuit court by Wis. Stat. § 846.102. Statutory interpretation is a question of law that we review independently of the determinations rendered by the circuit court and the court of appeals. Bank Mut. v. S.J. Boyer Constr., Inc., 2010 WI 74, ¶21, 326 Wis. 2d 521, 785 N.W.2d 462.

¶15 Our goal in statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect. State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. Interpretation of a statute begins with an examination of the statutory language. Id., ¶45. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id.

¶16 In seeking to give a statute its intended effect, we are cognizant that "[a] statute's purpose or scope may be readily apparent from its plain language or its relationship to

7

surrounding or closely-related statutes——that is, from its context or the structure of the statute as a coherent whole." Id., ¶49. Thus, statutory language is interpreted "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes." Id., ¶46.

¶17 Where the statutory language is ambiguous we turn to extrinsic sources, such as legislative history, to help us discern the meaning of a statute. Id., ¶51. "[A] statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses." Id., ¶47 (citations omitted).

## III

¶18 We begin with the language of the statute at issue. Wisconsin Stat. § 846.102 governs actions for enforcement of mortgage liens on abandoned properties.[5] Under the statute, if the court makes an affirmative finding that a property has been abandoned, it shall enter a judgment stating that "the sale of such mortgaged premises shall be made upon the expiration of 5 weeks from the date when such judgment is entered." Wis. Stat. § 846.102(1). It states:

> (1) In an action for enforcement of a mortgage lien if the court makes an affirmative finding upon proper evidence being submitted that the mortgaged premises

---

[5] The language of the statute and its placement within chapter 846 indicate that it governs only foreclosure actions initiated by mortgagees.

have been abandoned by the mortgagor and assigns, judgment shall be entered as provided in s. 846.10 except that the sale of such mortgaged premises shall be made upon the expiration of 5 weeks from the date when such judgment is entered. Notice of the time and place of sale shall be given under ss. 815.31 and 846.16 and placement of the notice may commence when judgment is entered.

Wis. Stat. § 846.102(1) (emphasis added).

¶19 The statute further permits entities other than the mortgagee to present evidence that a property had been abandoned and describes what type of evidence should be considered:

(2) In addition to the parties to the action to enforce a mortgage lien, a representative of the city, town, village, or county where the mortgaged premises are located may provide testimony or evidence to the court under sub. (1) relating to whether the premises have been abandoned by the mortgagor. In determining whether the mortgaged premises have been abandoned, the court shall consider the totality of the circumstances, including the following:

(a) Boarded, closed, or damaged windows or doors to the premises.

(b) Missing, unhinged, or continuously unlocked doors to the premises.

(c) Terminated utility accounts for the premises.

(d) Accumulation of trash or debris on the premises.

(e) At least 2 reports to law enforcement officials of trespassing, vandalism, or other illegal acts being committed on the premises.

(f) Conditions that make the premises unsafe or unsanitary or that make the premises in imminent danger of becoming unsafe or unsanitary.

Wis. Stat. § 846.102(2).

¶20 The plain language of the statute grants the circuit court the authority to order a bank to sell the property.

9

Indeed, under the statute the court's judgment must include a requirement that the property be sold. It provides that if the court makes a finding of abandonment then "judgment shall be entered as provided in s. 846.10 except that the sale of such mortgaged premises shall be made upon the expiration of 5 weeks from the date when such judgment is entered."[6]   Wis. Stat. § 846.102(1) (emphasis added).

¶21 Generally, "the word 'shall' is presumed mandatory when it appears in a statute." Karow v. Milwaukee Cnty. Civil Serv. Comm'n, 82 Wis. 2d 565, 570, 263 N.W.2d 214 (1978); see also Norman J. Singer & J.D. Shambie Singer, 3 Sutherland Statutory Construction § 57:2 (7th ed. 2008) ("'Shall' is considered presumptively mandatory unless there is something in the context or the character of the legislation which requires it to be looked at differently.").   We have previously interpreted "shall" as mandatory when used in Wis. Stat. ch. 846.   GMAC Mortgage Corp. v. Gisvold, 215 Wis. 2d 459, 478, 572 N.W.2d 466 (1998).

---

[6] Wisconsin Stat. § 846.10 states, in relevant part:

(1) If the plaintiff recovers the judgment shall describe the mortgaged premises and fix the amount of the mortgage debt then due and also the amount of each installment thereafter to become due, and the time when it will become due, . . . and shall adjudge that the mortgaged premises be sold for the payment of the amount then due . . . and when demanded in the complaint, direct that judgment shall be rendered for any deficiency against the parties personally liable . . . .
(2)

¶22 We acknowledge, however, that although the word "shall" suggests that a statutory provision is mandatory, the legislature's use of the word "shall" is not governed by a per se rule. See State v. R.R.E., 162 Wis. 2d 698, 707, 470 N.W.2d 283 (1991). This court has previously explained that "'[s]hall' will be construed as directory if necessary to carry out the intent of the legislature." Id.; see also State ex rel. Marberry v. Macht, 2003 WI 79, ¶15, 262 Wis. 2d 720, 665 N.W.2d 155 (court considers legislative intent in determining whether a statutory provision is mandatory or directory); State v. Thomas, 2000 WI App 162, ¶9, 238 Wis. 2d 216, 617 N.W.2d 230 (noting that factors to consider in determining whether a statute is mandatory include "the statute's nature, the legislative objective for the statute, and the potential consequences to the parties, such as injuries or wrongs.").

¶23 The context in which "shall" is used in Wis. Stat. § 846.102(1) indicates that the legislature intended it to be mandatory. First, when the legislature uses the terms "shall" and "may" in the same statutory section, it supports a mandatory reading of the term "shall" as the legislature is presumed to be aware of the distinct meanings of the words. GMAC Mortgage Corp., 215 Wis. 2d at 478; Karow, 82 Wis. 2d at 571; Singer 7 Singer, Sutherland Statutory Construction § 57:3. In Wis. Stat. § 846.102(1) the legislature used both "shall" and "may" indicating its intent that the words have different meanings.

¶24 Second, a comparison with the neighboring statutes also suggests that the term "shall" in Wis. Stat. § 846.102 was

11

intended to be mandatory.  The statutes on both sides of Wis. Stat. § 846.102 address mortgage foreclosures in other circumstances.  Wisconsin Stat. § 846.101 addresses foreclosures on 20-acre properties.[7]  Wisconsin Stat. § 846.103 addresses foreclosures on commercial properties and multifamily residences.[8]  Under both statutes it is up to the mortgagee to

---

[7] Wisconsin Stat. § 846.101 states:

(1) If the mortgagor has agreed . . . to the provisions of this section, and the foreclosure action involves a one- to 4-family residence that is owner-occupied at the commencement of the action . . . the plaintiff in a foreclosure action of a mortgage on real estate of 20 acres or less . . . may elect . . . to waive judgment for any deficiency which may remain due to the plaintiff after sale of the mortgaged premises . . . and to consent that the mortgagor, unless he or she abandons the property, may remain in possession of the mortgaged property and be entitled to all rents, issues and profits therefrom to the date of confirmation of the sale by the court.

(2) When plaintiff so elects, judgment shall be entered as provided in this chapter, except that . . . the sale of such mortgaged premises shall be made upon the expiration of 6 months from the date when such judgment is entered.

[8] Wisconsin Stat. § 846.103 provides:

(1) No foreclosure sale involving real property other than a one- to 4-family residence that is owner-occupied at the commencement of the foreclosure action . . . may be held until the expiration of 6 months from the date when judgment is entered except a sale under sub. (2). . . .

(continued)

12

elect whether to seek a foreclosure judgment. See Wis. Stat. § 846.101 (court enters judgment if mortgagee waives judgment of deficiency and permits the mortgagor to remain in possession of the property until it is sold); Wis. Stat. § 846.103 (same). In contrast to these neighboring statutes, Wis. Stat. § 846.102 does not require action by the mortgagee after it has initiated a foreclosure proceeding. It specifically permits entities other than the mortgagee to appear and submit evidence of abandonment. Wis. Stat. § 846.102(2). As the court of appeals stated, once a mortgagee has filed a foreclosure action, the focus of the proceeding is on the condition of the property, not the mortgagee's preference. Bank of New York, 352 Wis. 2d 205, ¶12.

¶25 The Bank contends that the court of appeals' interpretation of Wis. Stat. § 846.103 in Arch Bay Holdings LLC-

---

(2) If the mortgagor of real property other than a one- to 4-family residence that is owner-occupied at the commencement of the foreclosure action . . . has agreed . . . to the provisions of this section, the plaintiff in a foreclosure action of a mortgage . . . may elect by express allegation in the complaint to waive judgment for any deficiency which may remain due to the plaintiff after sale of the mortgaged premises . . . and to consent that the mortgagor, unless he or she abandons the property, may remain in possession of the mortgaged property and be entitled to all rents, issues and profits therefrom to the date of confirmation of the sale by the court. When the plaintiff so elects, judgment shall be entered as provided in this chapter, except that . . . the sale of the mortgaged premises shall be made upon the expiration of 3 months from the date when such judgment is entered.

13

Series 2008B v. Matson, No. 2013AP744, unpublished slip op. (Wis. Ct. App. Mar. 18, 2014), and Deutsche Bank Nat. Trust Co. v. Matson, No. 2012AP1981, unpublished slip op. (Wis. Ct. App. July 30, 2013), is dispositive on the issue of whether the court can require a mortgagee to sell an abandoned property. In Deutsche Bank, the court of appeals determined that the language in Wis. Stat. § 846.103 permitted the mortgagee to sell the property once the statutory prerequisites were met, but did not require it. No. 2012AP1981, ¶20. In Arch Bay, the court reached the same conclusion when interpreting a judgment containing the same language as the statute. No. 2013AP744, ¶17.

¶26 The Bank maintains that because the court of appeals determined that the language of Wis. Stat. § 846.103 was not mandatory, the same construction should be applied to Wis. Stat. § 846.102. However, as discussed above, Wis. Stat. § 846.103 and Wis. Stat. § 846.102 are significantly different statutes.[9] See supra ¶20. Further, Arch Bay and Deutsche Bank are unpublished and have no precedential authority. Wis. Stat. § 809.23(3)(b). Although they may be cited as persuasive authority, given the above discussion, they do not persuade us that the language in Wis. Stat. § 846.102 is permissive.

¶27 Considering the statute's clear language and its context, the Bank's argument that it cannot be required to sell

---

[9] We decline to interpret the similar sale language in Wis. Stat. §§ 846.101 and 846.103 as it is not at issue in this case.

14

a property under Wis. Stat. § 846.102 is unpersuasive. Wisconsin Stat. § 846.102 mandates that the court order a sale of the mortgaged premises if certain conditions are met. Those conditions do not depend on action by the mortgagee alone and are not dependent on its acquiescence or consent.

IV

¶28 Having determined that Wis. Stat. § 846.102 authorizes a court to order a mortgagee to bring a property to sale, we turn to consider whether a court can also require a mortgagee to bring a property to sale at a certain point in time.

¶29 Again, we begin with the words of the statute. It provides that "the sale of such mortgaged premises shall be made upon the expiration of 5 weeks from the date when such judgment [of foreclosure] is entered." Wis. Stat. § 846.102(1). This language is indicative of the time frame a court must impose for the sale: "upon expiration of 5 weeks."

¶30 The Bank asserts that even if Wis. Stat. § 846.102 mandates that the circuit court order a sale of the property after the redemption period, it provides no time limit for the sale. Absent any specific timeline, the Bank contends that it has five years to execute its judgment under Wis. Stat. § 815.04.[10]

---

[10] Wisconsin Stat. § 815.04(1)(a) provides:

> Upon any judgment of a court of record perfected as specified in s. 806.06 or any judgment of any other court entered in the judgment and lien docket of a court of record, execution may issue at any time
(continued)

15

¶31 We decline to adopt the Bank's argument. We acknowledge that the word "upon" in Wis. Stat. § 846.102 is ambiguous as "upon expiration of 5 weeks from the date when such judgment is entered" could be read to mean any time after the five weeks but before the five years. It could also be interpreted to mean immediately upon expiration of five weeks or something in between. In discerning the answer to our inquiry, we examine here the context of the statute, its legislative history, and the purpose of the statute.

¶32 When considered in light of its neighboring statutes, the context of Wis. Stat. § 846.102 suggests that the legislature intended a prompt sale. Wisconsin Stat. § 846.101, addressing 20-acre properties, provides that if the mortgagee waives judgment of deficiency and permits the mortgagor to remain in the property until it is sold, the court shall enter a judgment that the property be sold after the expiration of six months from the date of the judgment. Wisconsin Stat. § 846.103, addressing foreclosures of commercial properties and multifamily residences, provides that the mortgagee waives judgment of deficiency and permits the mortgagor to remain in the property until it is sold, the court shall enter a judgment

---

within 5 years after the rendition of the judgment. When an execution has been issued and returned unsatisfied in whole or in part other executions may issue at any time upon application of the judgment creditor.

16

that the property be sold after the expiration of three months from the date of the judgment. Wis. Stat. § 846.103(2).

¶33 The statute at issue in this case, Wis. Stat. § 846.102, prompts faster sales with fewer requirements for abandoned premises than its neighboring statutes. It provides that upon finding abandonment, the court shall enter a judgment that the premises shall be sold after the expiration of five weeks. Wis. Stat. § 846.102(1). Unlike its neighboring statutes, Wis. Stat. § 846.102 does not contain the requirements that the mortgagee waive deficiency judgment and permit the mortgagor to remain on the premises in order for the court to order a sale. When viewed in light of its neighboring statutes, the loosened requirements in Wis. Stat. § 846.102 evince an intent to ensure a prompt sale of the property.

¶34 The contrary statutory intent asserted by the Bank is unconvincing. Referencing the redemption periods in Wis. Stat. §§ 846.101, 846.102 and 846.103, the Bank contends that the purpose behind the statute is to create delay so that defaulted borrowers will have one last chance to retain their properties. However, the Bank's assertion ignores the differences between Wis. Stat. § 846.102 and those neighboring statutes. Wisconsin Stat. § 846.102 addresses properties that have been abandoned, properties which borrowers no longer have an interest in retaining. Thus, the policy concern of creating a delay does not appear to be implicated.

¶35 The legislative intent for a prompt sale is also supported by the legislative history of Wis. Stat. § 846.102.

17

In 2011, Wis. Stat. § 846.102 was amended to shorten the redemption period for abandoned properties from two months to five weeks, to add subsection (2) permitting the city, town, village, or county to provide testimony or evidence of abandonment, and to indicate what sort of evidence of abandonment a court should consider.  2011 WI Act 136, §§ 1r, 2 (enacted Mar. 21, 2012).  The Act was introduced as 2011 Senate Bill 307 with bipartisan support.  Four individuals spoke at the public hearing on the bill: its sponsor, a representative of the City of Milwaukee, a representative of Legal Action of Wisconsin, and a representative of the Wisconsin Bankers Association. 2011 Senate Bill 307, Hearing before the Senate Committee on Financial Institutions and Rural Issues, 2011 Regular Session, Nov. 30, 2011.  Each individual referenced that the bill's intent was to help municipalities deal with abandoned properties in a timely manner.[11]

¶36 Two of the speakers explained that abandoned properties were a significant problem in Milwaukee.  Such properties increase the crime rate and have a destabilizing impact on neighborhoods.  This testimony echoes researchers' findings that home abandonment leads to blight:

> Abandoned homes substantially decrease the value of neighboring properties, which in turn lowers the tax revenue cities can collect to help alleviate the

---

[11] The hearing can be viewed online at: http://www.wiseye.org/Programming/VideoArchive/ArchiveList.aspx?cm=152.

18

blight caused by abandonment. Moreover, abandoned homes become public nuisances, such as fire hazards, that can endanger the community.

Creola Johnson, Fight Blight: Cities Sue to Hold Lenders Responsible for the Rise in Foreclosures and Abandoned Properties, 2008 Utah L. Rev. 1169, 1171.[12]

¶37 Interpreting Wis. Stat. § 846.102 as permitting sale at any time within five years after judgment is entered would exacerbate the problem that the statute was meant to ameliorate. Such an interpretation would allow mortgagees to initiate foreclosures, but fail to bring the properties to sale for an extended period of time, leaving the properties in legal limbo.[13]

¶38 Multiple studies have remarked upon the negative impact of such a scenario. For example, a study by the

---

[12] The City of Milwaukee submitted an amicus brief detailing the scope of the City's abandoned property problem. It noted that there are currently 4,900 vacant buildings in the City. According to the City's records, approximately 400 of those 4,900 properties are currently in some stage of mortgage foreclosure.

Abandoned properties in Milwaukee are a magnet for crime and create unsafe conditions. The City explained that since 2011, its police department has responded to at least 2,025 burglaries, 93 aggravated assaults, 84 robberies, 44 sexual assaults, 36 sudden deaths, and 7 homicides at vacant buildings. Further, the City's fire department reported a 163% increase in the number of fires occurring in vacant residential buildings between 2005 and 2012.

[13] Various terms are used to describe this situation, including: "abandoned foreclosure," "bank walkaway," "zombie title/property," and "limbo loan." See Judith Fox, The Foreclosure Echo: How Abandoned Foreclosures are Reentering the Market Through Debt Buyers, 26 Loy. Consumer L. Rev. 25, 31 (2013).

19

Government Accountability Office determined that abandoned foreclosures create unsightly and dangerous properties that contribute to neighborhood decline. GAO, Mortgage Foreclosures: Additional Mortgage Servicer Actions Could Help Reduce the Frequency and Impact of Abandoned Foreclosures, GAO-11-93 at 29 (Nov. 2010). "[A]s a result of vandalism, exposure, and neglect, vacant properties can become worthless. . . . abandoned foreclosures that remain vacant for extended periods pose significant health, safety, and welfare issues at the local level." Id. at 31.

¶39 Another study has observed that "[t]he result of these abandoned foreclosures has been devastating to cities and consumers throughout the country." Judith Fox, The Foreclosure Echo: How Abandoned Foreclosures are Reentering the Market through Debt Buyers, 26 Loy. Consumer L. Rev. 25, 29-30 (2013). "With no threat of citation for nuisance violations, and thus little incentive to maintain the premises, many lenders very well may allow the properties they control to deteriorate." Kristin M. Pinkston, In the Weeds: Homeowners Falling Behind on their Mortgages, Lenders Playing the Foreclosure Game, and Cities Left Paying the Price, 34 S. Ill. U.L.J. 621, 633 (2009). Failing to interpret Wis. Stat. § 846.102 as enabling a court to require a prompt sale would inhibit its use as a tool to address abandoned properties.

¶40 Because its context and the legislative history of Wis. Stat. § 846.102 clearly indicate that the statute was intended to help municipalities deal with abandoned properties

20

in a timely manner, we decline to interpret it so as to permit properties to languish abandoned for five years. Cf. Waller v. Am. Transmission Co., 2013 WI 77, ¶108, 350 Wis. 2d 242, 833 N.W.2d 764 (construing statute in a manner to further the statutory purpose); Bank Mut., 326 Wis. 2d 521, ¶¶71-76 (interpreting Wis. Stat. § 846.103 in a manner consistent with the statute's goals).

¶41 In order to give effect to the statute's purpose, we interpret the requirement in Wis. Stat. § 846.102 that a court order an abandoned property to be brought to sale after the five week redemption period as a requirement that the court order the property to be brought to sale within a reasonable time after the redemption period. Admittedly, what is considered a reasonable time will vary with the circumstances of each case. The circuit court is in the best position to consider arguments and evidence on this issue. Thus, we leave it to the circuit court's discretion to determine, after considering the totality of the circumstances, what a reasonable period of time may be for each case, in light of the statute's purpose.

V

¶42 In this case, the circuit court did not determine whether the property on Concordia Avenue was abandoned. Rather, it denied Carson's motion after concluding that it did not have the authority to order the mortgagee to bring the property to sale as requested by Carson. Given that we have concluded that the circuit court does have such authority, a finding as to whether the property has been abandoned is needed here. Absent

21

a finding of abandonment, sale of the property cannot be ordered under Wis. Stat. § 846.102.

¶43 Accordingly, we remand the case to the circuit court to determine whether the Concordia property has been abandoned. If the court finds that the property has been abandoned, it shall consider the totality of the circumstances and, consistent with the statutory purpose, enter an order stating the reasonable time after the redemption period in which the mortgagee must bring the property to sale.

VI

¶44 In sum, based on the statute's plain language and context we conclude that when the court determines that the property is abandoned, Wis. Stat. § 846.102 authorizes the circuit court to order a mortgagee to bring a mortgaged property to sale after the redemption period.

¶45 We further conclude, consistent with the purpose of the statute, that the circuit court shall order the property to be brought to sale within a reasonable time after the redemption period. The circuit court's determination of what constitutes a reasonable time should be based on the totality of the circumstances in each case.

¶46 In this case, the circuit court did not reach the issue of whether the property had been abandoned. Accordingly, we affirm the court of appeals and remand the case to the circuit court for such a determination and further proceedings.

*By the Court.*—The decision of the court of appeals is affirmed and the cause is remanded to the circuit court.

22

¶47  DAVID T. PROSSER, J.  *(concurring).*  I agree with the majority's decision to affirm the court of appeals.  I do not agree with the majority's reasoning in support of this decision.  In my view, the owner of real property may seek a judicial sale of the property when the owner's authority to sell is impeded or otherwise in doubt.  Wis. Stat. § 840.03(1)(g).  However, the ultimate availability of this judicial "remedy" is dependent upon the equities involved, including recognition of the "interests in real property" of others.  Wis. Stat. § 840.01.  For the reasons stated below, I respectfully concur.

I

¶48  The majority opinion is preoccupied with an interpretation of Wis. Stat. § 846.102, which is part of the chapter on Real Estate Foreclosure.  Chapter 846 is a detailed and vitally important chapter of the Wisconsin Statutes.  Section 846.102, entitled "Abandoned premises," is a significant provision within the chapter.  A mistaken interpretation of this section is likely to have profound ramifications on real estate financing in Wisconsin.

¶49  The early sections of Chapter 846 set out foreclosure procedure in a variety of situations.  Before examining these sections, I believe it is useful to reiterate several fundamental principles.

¶50  A mortgage has been defined as "any agreement or arrangement in which property is used as security."  Wis. Stat. § 851.15.  "Wisconsin is a lien-theory state with regard to

1

mortgages. A mortgage creates a lien on real property but does not convey title to the property to the mortgagee (lender)." Lawrence Sager, Wisconsin Real Estate Practice & Law 137 (11th ed. 2004).

¶51 In simple terms, a "mortgage conveys an interest in the real estate to the lender as security for the debt, while the mortgage note is a promise to repay the debt. Mortgages are the most common form of loan instruments in Wisconsin." Id.

¶52 The foreclosure provisions of Chapter 846 are invoked by mortgagees (lenders) when a mortgagor (borrower) fails to repay a debt. The law provides protections for the mortgagor, so that a mortgagee cannot move too quickly against the mortgagor, and the mortgagor has a period to redeem the property after foreclosure.

¶53 As a practical matter, a mortgagee invokes the foreclosure provisions of Chapter 846 when its loan is not being repaid. However, foreclosure does not transfer ownership of the property to the mortgagee. Thus, the mortgagee does not control the mortgaged property after foreclosure, and it may end up receiving no payment on its loan until the property is sold and the sale is confirmed. As a result, the mortgagee normally has a strong incentive for a prompt sale after foreclosure.

¶54 The mortgagee is usually entitled to a deficiency judgment against the mortgagor in the event that sale of the property does not satisfy the debt. In truth, however, many mortgagors do not have the wherewithal to satisfy a deficiency judgment. This is one reason why the mortgagee may waive its

right to a deficiency judgment in order to speed up sale of the property. There is no reason for the mortgagee to delay sale of the property unless there is a rational economic reason to do so.

¶55 Wisconsin Stat. § 846.10 is the basic foreclosure statute. It reads in part:

> (1) If the plaintiff recovers the judgment shall describe the mortgaged premises and fix the amount of the mortgage debt then due and also the amount of each installment thereafter to become due, and the time when it will become due, and whether the mortgaged premises can be sold in parcels and whether any part thereof is a homestead, and shall adjudge that the mortgaged premises be sold for the payment of the amount then due and of all installments which shall become due before the sale, or so much thereof as may be sold separately without material injury to the parties interested, and be sufficient to pay such principal, interest and costs; and when demanded in the complaint, direct that judgment shall be rendered for any deficiency against the parties personally liable and, if the sale is to be by referee, the referee must be named therein.

Wis. Stat. § 846.10(1).

¶56 Subsection (2) then reads:

> (2) . . . No sale involving a one- to 4-family residence that is owner-occupied at the commencement of the foreclosure action . . . may be held until the expiration of 12 months from the date when judgment is entered, except a sale under s. 846.101 or 846.102. . . . In all cases the parties may, by stipulation, filed with the clerk, consent to an earlier sale.

Wis. Stat. § 846.10(2).

¶57 Section 846.101 deals with foreclosure sales (primarily of residential property under 20 acres) in which the mortgagor has agreed to a shorter period of time for sale and

3

redemption (six months) and the "plaintiff" (mortgagee) has elected in its complaint to waive its right to a deficiency judgment against the mortgagor.

¶58 Section 846.102 permits an even shorter period between foreclosure and sale (five weeks) when the court finds that the mortgagor has abandoned the property——that is, "relinquishment of possession or control of the premises whether or not the mortgagor or the mortgagor's assigns have relinquished equity and title." Wis. Stat. § 846.102(1).

¶59 Section 846.103 relates to "Foreclosures of commercial properties and multifamily residences."

¶60 The mortgagee is the "plaintiff" under these four sections. The mortgagor does not need to sue the mortgagee because the mortgagor may stipulate to a sale without initiating litigation. Wis. Stat. § 846.10(2).

¶61 That the mortgagee is the "plaintiff" under Wis. Stat. § 846.102 is clear from the opening phrase of the section: "In an action for enforcement of a mortgage lien . . . ." The mortgagee has the "mortgage lien" on mortgaged property as well as standing to enforce the lien; the mortgagor does not have either. Moreover, although § 846.102 does not use the word "plaintiff," as surrounding §§ 846.10, 846.101, and 846.103 do, § 846.102 refers back to § 846.10: "judgment shall be entered as provided in s. 846.10 . . . ."

¶62 Any notion that a municipality could bring an action under § 846.102 is belied by the language in subsection (2),

4

which limits the role of "a representative" of a municipality to providing testimony or evidence of abandonment.[1]

II

¶63 In this case, the Bank of New York brought suit against Shirley Carson under Wis. Stat. § 846.101. The Bank waived its right to a deficiency judgment. The complaint, filed January 25, 2011, reads in part:

> 6. The mortgagors expressly agreed to the reduced redemption period provisions contained in Chapter 846 of the Wisconsin Statutes; the plaintiff hereby elects to proceed under section 846.101 with a six month period of redemption, thereby waiving judgment for any deficiency against every party who is personally liable for the debt, and to consent that the owner, unless he or she abandons the property, may remain in possession and be entitled to all rents and profits therefrom to the date of confirmation of the sale by the court.

¶64 The Milwaukee County Circuit Court, Mel Flanagan, Judge, entered a default judgment (Findings of Fact, Conclusions of Law and Judgment) on June 13, 2011. The court found that "the mortgaged premises . . . shall be sold at public auction

---

[1] The principal author of the bill creating subsection (2) of Wis. Stat. § 846.102, Senator Glenn Grothman, explained that the purpose of the legislation was to shorten the redemption period in abandonment cases from two months to five weeks and to permit municipalities to present evidence of abandonment. He testified: "The effects of this bipartisan bill will be modest, but they are an attempt to better balance the needs of municipalities and responsible homeowners while still protecting the rights of property owners who may have fallen on hard times." Legislative Council File for 2011 S.B. 307, Letter from Sen. Glenn Grothman to Members of the Assembly Committee on Financial Institutions (Feb. 1, 2012), available at http://legis.wisconsin.gov/lc/comtmats/old/11files/sb0307_201112 01084222.pdf.

under the direction of the sheriff, <u>at any time after three month(s) from the date of entry of judgment</u>." (Emphasis added.) The court also found "THAT NO DEFICIENCY JUDGMENT MAY BE OBTAINED AGAINST ANY DEFENDANT." The court determined that the mortgagor's indebtedness totaled $81,356.59.

¶65 The mortgagor made no effort to redeem the property. In fact, she abandoned the property, according to an affidavit she filed with the court on November 6, 2012.

¶66 On the same date, the mortgagor filed a motion in the original foreclosure case. The mortgagor brought the motion under Wis. Stat. §§ 806.07(g) & (h) and 846.102. The motion sought to reopen the foreclosure judgment pursuant to Wis. Stat. § 806.07 and to compel the Bank to sell the mortgaged property "upon the expiration of 5 weeks from the date of entry of the amended judgment" under Wis. Stat. § 846.102.

¶67 As the majority opinion notes, the Milwaukee County Circuit Court, Jane Carroll, Judge, denied the motion. The court "observed that Wis. Stat. § 846.102 did not specifically grant it authority to order the Bank to sell the property at a specific time." Majority op., ¶12.

> It explained "I can't find anywhere in the statute [Wis. Stat. § 846.102] that I have the authority to grant the relief that [Carson is] requesting." The court further noted that the statute contemplates that the redemption period be elected by the mortgagee, not the borrower, and questioned whether a mortgagee could be compelled to execute a judgment when someone else is seeking the order. Accordingly, it stated, "I'm specifically finding that I don't have the authority . . . so the motion is denied on those grounds."

Id.

6

¶68 The court of appeals reversed. <u>Bank of New York v. Carson</u>, 2013 WI App 153, 352 Wis. 2d 205, 841 N.W.2d 573. The court of appeals criticized the Bank (mortgagee) for not maintaining the property. <u>Id.</u>, ¶5. More important, the court of appeals concluded that a mortgagor could rely on Wis. Stat. § 846.102 to compel a sale of the mortgagor's property:

> We . . . conclude that the trial court erred as a matter of law when it concluded that only the Bank could elect the five-week abandonment period provided in the statute. The trial court could have . . . decided to amend the judgment to a foreclosure of an abandoned property as described by § 846.102.

<u>Id.</u>, ¶12. The court of appeals added:

> The statutory language also makes clear that the trial court did have the power to order the Bank to sell the property upon the expiration of the redemption period. . . . We conclude that the plain language of the statute directs the court to ensure that an abandoned property is sold without delay, and it logically follows that if a party to a foreclosure moves the court to order a sale, the court may use its contempt authority to do so.

<u>Id.</u>, ¶13.

¶69 The majority affirms the court of appeals without disavowing these pronouncements. On the contrary, the majority adopts the method of statutory interpretation used by the court of appeals, <u>see</u> majority op., ¶¶18, 20, 21, 23, 24, to reach the following conclusions:

(1) "The plain language of [Wis. Stat. § 846.102] grants the circuit court the authority to order a bank to sell the property." <u>Id.</u>, ¶20. "[I]f the court makes a finding of abandonment then 'judgment <u>shall</u> be entered as provided in s.

7

846.10 except that the sale of such mortgaged premises shall be made upon the expiration of 5 weeks from the date when such judgment is entered.' Wis. Stat. § 846.102(1) (emphasis added)." Id. (footnote omitted).

(2) "The context in which 'shall' is used in Wis. Stat. § 846.102(1) indicates that the legislature intended it to be mandatory." Id., ¶23.

(3) "Wis. Stat. § 846.102 does not require action by the mortgagee after it has initiated a foreclosure proceeding. . . . As the court of appeals stated, . . . the focus of the proceeding is on the condition of the property, not the mortgagee's preference." Id., ¶24.

(4) "Considering the statute's clear language and its context, the Bank's argument that it cannot be required to sell a property under Wis. Stat. § 846.102 is unpersuasive. Wisconsin Stat. § 846.102 mandates that the court order a sale of the mortgaged premises if certain conditions are met. Those conditions do not depend on action by the mortgagee alone and are not dependent on its acquiescence or consent." Id., ¶27.

(5) "[W]e turn to consider whether a court can also require a mortgagee to bring a property to sale at a certain point in time." Id., ¶28. "[W]e begin with the words of the statute. . . . This language is indicative of the time frame a court must impose for the sale: 'upon expiration of 5 weeks.'" Id., ¶29.

(6) "[T]he context of Wis. Stat. § 846.102 suggests that the legislature intended a prompt sale." Id., ¶32. "The

8

legislative intent for a prompt sale is . . . supported by the legislative history . . . ." Id., ¶35.

¶70 I acknowledge that the majority opinion softens its holdings by requiring a court acting under Wis. Stat. § 846.102 to order mortgaged property to be "brought to sale within a reasonable time after the redemption period." Id., ¶41. But this statement is inconsistent with the majority's overall interpretation of the statute.

### III

¶71 The majority opinion radically revises the law on mortgage foreclosure. Under Wisconsin law, a lending institution like the Bank of New York does not own the property upon which it holds a mortgage as security for a debt. The mortgagee's obvious goal is to be repaid on its loan, with interest for the use of its money. When this goal becomes infeasible, the mortgagee prudently seeks to minimize its loss. Sometimes the mortgagee delays the sale of foreclosed property in the expectation that the circumstances for sale will improve. The majority opinion substantially impairs the mortgagee's ability to minimize or mitigate a loss.

¶72 The opinion shifts to the circuit court the authority to set the date for sale of abandoned property. It gives the court authority to disregard the preferences of the mortgagee as to the timing of the sale when the mortgagee files for foreclosure under Wis. Stat. §§ 846.10, 846.101, or 846.102.

¶73 Because of this loss in flexibility, mortgagees are likely to act to protect their interests. For instance, the

9

costs of borrowing money to finance residential real estate transactions are likely to go up, and some potential borrowers will be denied loans altogether.

¶74 Under the new regime, thousands of foreclosed properties statewide may have to be scheduled for sale within a few months of this decision because they have already been held by mortgagees without sale for an "unreasonable" period after foreclosure.

¶75 These consequences are not discussed by a majority that is a bit too eager to depict mortgage lenders as the source of the problem.

¶76 Knowing what they face if they file for foreclosure when the timing is not propitious, many mortgagees may choose not to file foreclosure actions. If mortgagees forego filing, leverage will transfer from mortgagees to non-paying mortgagors.

¶77 Still, some mortgagors may wish to extricate themselves from their continuing ownership responsibilities.

¶78 The majority attempts to preclude a mortgagor from becoming a plaintiff under Wis. Stat. § 846.102, majority op., ¶18 n.5, by suggesting that only a mortgagee may initiate an action under Chapter 846. This is a correct interpretation of the chapter. However, it does not account for Wis. Stat. § 840.03.

¶79 Wisconsin Stat. § 840.01(1) defines the term "interest in real property."[2] The definition implicates those who own or

---

[2] Wisconsin Stat. § 840.01(1) reads:

(continued)

10

hold title to land (like Shirley Carson) and those with "security interests and liens on land" (like the Bank of New York).

¶80 Wisconsin Stat. § 840.03 then provides:

Real property remedies. (1) Any person having an interest in real property may bring an action relating to that interest, in which the person may demand the following remedies singly, or in any combination, or in combination with other remedies not listed, unless the use of a remedy is denied in a specified situation:

      (a) Declaration of interest.

      (b) Extinguishment or foreclosure of interest of another.

      (c) Partition of interest.

      (d) Enforcement of interest.

      (e) Judicial rescission of contract.

      (f) Specific performance of contract or covenant.

      (g) Judicial sale of property and allocation of proceeds.

      (h) Restitution.

---

(1) Except as provided in sub. (2), "interest in real property" includes estates in, powers under ch. 702 over, present and future rights to, title to, and interests in real property, including, without limitation by enumeration, security interests and liens on land, easements, profits, rights of appointees under powers, rights under covenants running with the land, powers of termination and homestead rights. The interest may be an interest that was formerly designated legal or equitable. The interest may be surface, subsurface, suprasurface, riparian or littoral.

11

> (i) Judicial conveyance of interest.
>
> (j) Possession.
>
> (k) Immediate physical possession.
>
> (l) Restraint of another's use of, or activities on, or encroachment upon land in which plaintiff has an interest.
>
> (m) Restraint of another's use of, activities on, or disposition of land in which plaintiff has no interest; but the use, activity or disposition affect plaintiff's interest.
>
> (n) Restraint of interference with rights in, on or to land.
>
> (o) Damages.
>
> (2) The indication of the form and kind of judgment in a chapter dealing with a particular remedy shall not limit the availability of any other remedies appropriate to a particular situation.

(Emphasis added.)

¶81 Section 840.03 includes in its listed remedies "Judicial sale of property" and "Judicial conveyance of interest." Mortgagors may seek to secure one of these remedies to escape the responsibilities of ownership.

¶82 As I read the statute, the owner of property may "bring an action" for a judicial sale or a judicial conveyance of interest. Although a mortgagor may not be able to serve as plaintiff in a foreclosure action under any of the foreclosure statutes, e.g., Wis. Stat. §§ 846.10, 846.101, 846.102, and 846.103, the mortgagor may be able to invoke the new principles this court has discovered in Wis. Stat. § 846.102 when it

12

"brings an action" for judicial sale or conveyance of interest under Wis. Stat. § 840.03(1).

¶83  Wisconsin Stat. § 840.03(1) has been part of Wisconsin law for 40 years.  See § 16, Chapter 189, Laws of 1973 (creating Wis. Stat. § 840.03(1) (1974)).  It has been interpreted as creating substantive rights.  SJ Props. Suites v. Specialty Fin. Grp., LLC, 864 F. Supp. 2d 776 (E.D. Wis. 2012).  Nonetheless, a mortgagor seeking the sale of his or her property or the conveyance of his or her property under Wis. Stat. § 840.03(1) would heretofore have been required to show that the mortgagor was entitled equitably to this remedy, inasmuch as it is clear that a defaulting mortgagor does not have the same powers and prerogatives as a mortgagee under Wis. Stat. § 846.102.

¶84  "An action to foreclose a mortgage is equitable in nature."  Wis. Brick & Block Corp. v. Vogel, 54 Wis. 2d 321, 327, 195 N.W.2d 664 (1972) (citing Frick v. Howard, 23 Wis. 2d 86, 96, 126 N.W.2d 619 (1964)); see also Harbor Credit Union v. Samp, 2011 WI App 40, ¶19, 332 Wis. 2d 214, 796 N.W.2d 813; JP Morgan Chase Bank, NA v. Green, 2008 WI App 78, ¶11, 311 Wis. 2d 715, 753 N.W.2d 536; First Fin. Sav. Ass'n v. Spranger, 156 Wis. 2d 440, 444, 456 N.W.2d 897 (Ct. App. 1990).  This equity prevails throughout the proceedings.  GMAC Mortg. Corp. v. Gisvold, 215 Wis. 2d 459, 480, 572 N.W.2d 466 (1998).  The court's discretion should be exercised so that "no injustice shall be done to any of the parties."  Strong v. Catton, 1 Wis. 408, 424 (1853).

13

¶85 Considering equity, a mortgagee may want to delay the sale of mortgaged property that has been abandoned for legitimate economic reasons. Admittedly, the mortgagee might be forced to recognize that such a delay will constitute a burden on the mortgagor in terms of maintenance and taxes. Consequently, it is not inherently unreasonable for a mortgagor to seek relief from such a burden, inasmuch as it is unrealistic to expect that a mortgagor will properly maintain and pay the taxes on property it has abandoned. At the same time, however, if the mortgagee is expected to assume responsibility for abandoned property, the mortgagee must be given reasonable options, even if unpalatable, rather than be forced into an unwanted sale without the protection of the equitable principles upon which mortgage foreclosures rest.

¶86 The majority opinion alters these principles by its interpretation of Wis. Stat. § 846.102. It forces prompt public sales despite the objection of the mortgagee. This interpretation of Wis. Stat. § 846.102 does not comport with the statute's language or its legislative history and will often be inequitable to the mortgagee. Even a mortgagee that conscientiously maintains abandoned property may be forced to sell it quickly at the direction of the court.

¶87 I agree that the mortgagor here is entitled to seek the statutorily recognized remedy of "sale," but only as provided under Wis. Stat. § 840.03(1)(g), prior to the court's mistaken interpretation of Wis. Stat. § 846.102. For the reasons set forth, I respectfully concur.

14

¶88  I  am  authorized  to  state  that  Justice  ANNETTE KINGSLAND  ZIEGLER  and  Justice  MICHAEL  J.  GABLEMAN  join  this concurrence.